■ The People of the State of New York, Respondent, v Ernest Jerome Henry, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Boklan,

J.), rendered November 8, 1984, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement officers.

Ordered that the judgment is affirmed.

On the morning of September 24, 1983, the "massively" incinerated body of the deceased, Kathleen Reid, was discovered in a burned automobile in Fort Lee, New Jersey. A joint investigation was commenced by the Bergen County Prosecutor's Office and the Fort Lee Police Department. The defendant, whose engagement to the deceased had recently been broken off, was contacted later that day and responded to police headquarters in Fort Lee. Upon being apprised of Ms. Reid's demise, the defendant, after having answered several preliminary questions, ultimately consented to submit to a polygraph examination.

The defendant then signed two polygraph consent forms which contained *Miranda* warnings highlighted by an investigator, and which further advised that he would be permitted to leave at any time and could not be compelled to stay. Investigator Terrence Alver proceeded to administer the polygraph test to the defendant, and asked him a series of questions, which he repeated twice. The investigator then evaluated the test results and challenged the defendant: "I told him that he was lying; that it was my opinion he killed Kathy Reid". The defendant soon thereafter began to cry, and confessed.

The defendant explained that in the early afternoon of September 23, 1983, he waited for Ms. Reid outside her place of employment in Mineola, Nassau County, seeking to discuss the possibility of a reconciliation with her. She rebuffed his efforts; nevertheless, he managed to enter her automobile and drive it. He confronted her with their breakup, but she responded that she did not want to discuss it. When she attempted to exit the car, he hit her over the head twice with a cut-down mop handle. She slumped down in the seat, bleeding from the head, but was still exhibiting signs of life. When he was unable to ascertain whether she was still alive, the defendant placed Ms. Reid's body in the trunk of the car and drove to Fort Lee, New Jersey, abandoning the car sometime that afternoon.

Early the next morning, the defendant returned to the scene. He placed her body in the front seat of the car, doused

both the interior of the car and Ms. Reid's body with gasoline, and set them on fire. After he was advised of and waived his *Miranda* rights, the defendant agreed to, and did, provide a stenographic statement.

The defendant challenges the hearing court's determination denying his motion to suppress the statements, claiming that the totality of the circumstances, particularly the manner in which the polygraph test was administered, revealed that the confession was involuntarily made.

The voluntariness of a confession is to "be determined through an examination of the totality of the circumstances surrounding the confession" *(People v Leonard,* 59 AD2d 1, 12-13). "The use of a polygraph will not, in and of itself, render a confession inadmissible as the product of coercion * * * However, the use or misuse of a polygraphic examination is certainly a factor to be considered in determining whether there was impermissible coercion" *(People v Leonard, supra,* at 14-15).

While there was at least some measure of guile employed by the police, particularly the confrontation of the defendant with the test results and telling him that they indicated that he was lying, such a stratagem "need not result in involuntariness without some showing that the deception was so fundamentally unfair as to deny due process * * * or that a promise or threat was made that could induce a false confession" *(People v Tarsia,* 50 NY2d 1, 11; *see, People v Zehner,* 112 AD2d 465, 466, *lv denied* 66 NY2d 619). We do not perceive the conduct of the law enforcement officials to have been so egregious as to yield the conclusion that the confession was involuntarily rendered *(see, People v Zehner, supra; People v Calhoun,* 78 AD2d 658).

Nor does a consideration of the circumstances surrounding the confession, to wit, "the duration and conditions of detention, the manifest attitude of the police toward the detainee, the existence of threat or inducement, and the age, physical state and mental state of the detainee" *(People v Leonard, supra,* at 13), compel a different result. This 22-year-old, college-educated defendant neither complained of fatigue nor was subjected to coercive tactics, was provided with food upon request, chose to waive his rights after being advised of them several times and volunteered that "he would be willing to help * * * in any way he could". The record amply supports the hearing court's conclusion that the defendant's statements were voluntary.

Turning now to the defendant's conviction, we conclude that, viewing the evidence in the light most favorable to the People *(see, People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932), the evidence was legally sufficient to permit the jury to conclude that "[u]nder circumstances evincing a depraved indifference to human life", the defendant recklessly engaged in conduct which created a grave risk of death, thereby causing the death of Kathleen Reid (Penal Law § 125.25 [2]; § 15.05 [3]). Moreover, upon the exercise of our factual review power we are satisfied that the evidence established the defendant's guilt beyond a reasonable doubt and that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

The evidence adduced at the trial revealed that after delivering two blows to Ms. Reid's head, she began to bleed from the head and had a spell of moaning. She eventually lapsed into an unconscious state. The defendant, as yet uncertain as to Ms. Reid's condition, placed her in the trunk of the car and abandoned her in New Jersey. The medical examiner's testimony established that Ms. Reid's death occurred prior to the fire and was caused by "a blunt injury to the head". Moreover, he discovered a large blood clot about the deceased's left kidney, which, he opined, had been caused by a blunt object while she was alive, as well as areas of contusion in her left flank. Thus, the jury could have concluded that Ms. Reid was alive at the time she was placed in the trunk of the car, that she sustained the kidney and flank injuries or yet a further blow to the head when she was being placed into the trunk or while the car was in motion, that she died sometime thereafter, and that the "defendant's act was of such gravity that it placed the crime upon the same level as the taking of life by premeditated design" *(People v Register,* 60 NY2d 270, 274, *cert denied* 466 US 953; *see, People v Kanelos,* 107 AD2d 764).

Finally, we address the defendant's claim that the prosecution failed to establish that the jurisdiction of the New York courts, and specifically, that of Nassau County, was properly invoked.

"A person may be convicted in an appropriate criminal court of a particular county, of an offense of which the criminal courts of this state have jurisdiction pursuant to section 20.20 * * * when:

"1. Conduct occurred within such county sufficient to establish:

"(a) An element of such offense" (CPL 20.40).

Clearly, the defendant's statement that he struck the deceased while in West Hempstead or Franklin Square in Nassau County was sufficient to confer jurisdiction upon the State of New York and Nassau County. Indeed, in returning its verdict, the jury rendered an initial determination that geographical jurisdiction was properly invoked.

We have examined the defendant's remaining contentions, including those asserted by the defendant *pro se,* and find them to be either unpreserved for our review or without merit. Mangano, J. P., Eiber, Sullivan and Harwood, JJ., concur.