◼ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANTHONY DI FABIO, Respondent.—Order insofar as appealed from reversed on the law and defendant's motion denied. Memorandum: It was error for the court to suppress statements made by the defendant after 8:30 P.M. on the ground that the police unnecessarily delayed his arraignment in order to obtain a confession. We find, rather, that there was no unreasonable delay in arraignment, that defendant's statements were made voluntarily, that none of his rights were violated and that all of his statements are, therefore, admissible.

The hearing court found and we agree that defendant was not in custody when he was interrogated by the police at the Allendale Columbia School during the afternoon. We also agree that, although defendant voluntarily accompanied the police to the Public Safety Building, when the police failed to administer a polygraph test to defendant, the situation be-

came custodial. The record reveals that the polygraph operator was on duty in the Public Safety Building when defendant arrived at approximately 5:15 P.M. and that he went off duty at 6:00 P.M., without being asked to administer the test. Thus the questioning of defendant by Chief Barker, which lasted until approximately 6:30 P.M., was a departure from the agreement by which defendant voluntarily agreed to accompany the police and constituted custodial interrogation. We conclude, however, that such interrogation was entirely reasonable and conducted in accord with defendant's rights. It is absolutely clear, as the hearing court found, that defendant was properly apprised of his *Miranda* rights and that he understood and waived them. It is also clear that the police had probable cause to arrest defendant; nevertheless, we agree with the Special Prosecutor that the fact that they had probable cause did not create a duty to arrest the defendant and that it was entirely proper for the police to attempt to gain a confession in order to secure the quality and quantity of proof necessary to commence a successful prosecution *(see, People v Brinsko,* 115 AD2d 859, 860, *lv denied* 67 NY2d 940; *People v Williams,* 112 AD2d 259, *lv denied* 66 NY2d 923; *see also, United States v Lovasco,* 431 US 783, 791, *reh denied* 434 US 881).

We disagree with the hearing court that there was a delay in arraignment calculated to deprive defendant of his right to counsel. The court relied on *People v Edgerton* (115 AD2d 257, *lv denied* 67 NY2d 882) and *People v Cooper* (101 AD2d 1) in arriving at its conclusion that arraignment was unduly delayed and required suppression of defendant's statement. Those cases are inapposite. In *Edgerton* the police had a typed signed statement from defendant admitting his commission of arson at 7:30 P.M. He was then driven to the scene of one of the fires, photographed reenacting the starting of the fire and tape recordings were made of subsequent extensive interrogations. He was not arraigned until 1:00 A.M. the following morning. This court, noting the possibility that the delay might have been designed to deprive defendant of his right to counsel, merely remitted the case to the trial court for a hearing on that issue. In *People v Cooper (supra),* defendant was arrested at approximately 2:00 P.M. on July 19, placed in a cell and interrogated extensively throughout that day and night and the next day and was not arraigned until the afternoon of July 20. The court found that the delay was specifically for the purpose of depriving defendant of his critical stage right to counsel so that the police could obtain

an uncounseled confession *(People v Cooper, supra,* at 10-11). The significant difference is that defendant had been placed under arrest 24 hours before he was arraigned.

No such delay occurred here. Defendant was taken to the Public Safety Building and interrogation began at 5:15 P.M. He was interrogated until approximately 7:00 to 7:30 P.M. at which time he was left alone until 8:30 P.M. while the polygraph operator was summoned to return to headquarters. At 8:30 P.M., interrogation by Major Coon began and defendant's oral statement was completed by 9:20 P.M. The police candidly admitted that they were attempting to get a confession and that they did not intend to make an arrest unless they got one. That is understandable since the only evidence consisted of the statements of two four-year-old girls plus, when told that he had been accused of molesting the children, defendant's tearful response that he had sexual fantasies and problems with respect to children and needed help. As previously noted, it is within the discretion of law enforcement officers to determine when they have the quality of proof necessary to obtain an indictment *(see, People v Brinsko, supra).* After defendant had made his oral admissions at 9:20 P.M., there was no further interrogation or further attempt to gain additional incriminating information. Between 9:20 P.M. and 2:00 A.M. when defendant was arraigned, defendant ate and took a nap, the statement was typed and corrections made, defendant read the statement and signed it, and an arraigning Magistrate was contacted. At any rate, any delay occurring after the defendant made the statement had no bearing on its voluntariness *(see, People v Vargas,* 7 NY2d 555, 566).

We cannot agree with the dissent that the failure to administer a polygraph test when defendant reached the Public Safety Building constituted a "premeditated plan to extract defendant's confession by false promise without the benefit of his right to counsel". Nor do we agree that the confession was involuntary merely because defendant was subjected to the efforts of six police officers over a period of approximately three hours. It is true that, instead of administering the polygraph test, the police began to interrogate defendant as soon as he reached headquarters and that such interrogation continued until approximately 7:30 P.M. It is undisputed that at that time, the police ceased interrogation and sent for the polygraph operator who had gone home and that he in fact arrived during the period between 8:30 P.M. and 9:20 P.M. when defendant made the admissions to Major Coon. It is

difficult to see how the delay in administering the polygraph test coerced defendant into making a confession. Indeed, defendant never mentioned the polygraph during his testimony at the suppression hearing and it is clear on this record that he did not ask that such test be administered after he arrived at headquarters. Nor did defendant raise the issue before the hearing court that his admissions were obtained by ruse or trickery. The only issue presented to the hearing court was that there had been an undue delay in arraignment.

Nevertheless, addressing the merits, we find nothing improper in the manner in which defendant was treated. Defendant is a 26-year-old man with a college degree. The police were about to leave the Allendale School in the afternoon after questioning defendant for some time but, at his request for help, did not leave. He was informed more than once of his *Miranda* rights and stated that he understood them. At one point he was asked if he wanted his parents contacted and he declined. He was questioned over a period of approximately four hours, for more than an hour of which he was left alone. He made no requests for food or drink nor did he complain of being tired either at the time or at the hearing. There were neither promises nor threats to extract a confession. The dissent thus places a gloss on the facts of this case which is neither supported in the record nor urged upon us by defendant.

The cases on which the dissent relies to support its position that defendant's statement was procured by unlawful inducement and mental coercion are totally distinguishable from the case before us. In *Haynes v Washington* (373 US 503), Haynes was held for 16 hours without being advised of his rights and his repeated requests to call an attorney and to call his wife were met with the response that he could call only if he "cooperated" and gave a statement. In *Lynumn v Illinois* (372 US 528), the police threatened Lynumn that her 2- and 4-year-old children would be taken from her and that she would not see them again but that if she cooperated, they would recommend leniency. Even more egregious was the police conduct in *Ferguson v Boyd* (566 F2d 873), in which Ferguson stated that he would not speak until he saw his attorney but expressed great concern for his girlfriend who had also been arrested. Despite his request for counsel, he was questioned by the prosecutor, transported to a distant spot, held for six days before arraignment, and, moments before the courtroom arrival of his counsel, told by the prosecutor that his girlfriend would be released if he made a statement.

The statements in those cases were clearly extracted by means of threats, psychological coercion, and flagrantly improper police conduct. Those elements are totally lacking in the present case and we conclude that there is no basis for suppression of any of defendant's statements.

All concur, except Callahan, J. P., and Green, J., who dissent and vote to affirm, in the following memorandum.

Callahan, J. P., and Green, J. (dissenting). We would affirm the order suppressing defendant's statement essentially for the reasons stated in the comprehensive decision of the hearing court (Mark, J.). The record amply supports the hearing court's finding that defendant was in custody shortly after his arrival at police headquarters on March 4, 1985 (see, People v Mirenda, 57 NY2d 261; People v McNeeley, 77 AD2d 205, 208-209). Defendant did not confess until several hours later after being interrogated by at least six different law enforcement officers. Although defendant initially agreed to accompany the detectives to the police station, he did so solely for the purpose of taking a polygraph test. Since he was never given the test despite ample opportunity to do so, it is clear that the polygraph was used as a pretext to entice the defendant to come to the station so he could be interrogated until he confessed (see, CPL 60.45 [2] [b] [i]). In fact, as the hearing court found, Officers Hagler and Muscatella decided even before speaking with defendant at the school that they would not arrest defendant until after a confession was obtained. Indeed, when the headmaster of the school at which defendant worked called the police around 8:30 P.M. to inquire whether defendant had obtained an attorney, the officer replied "No. Our job is to get as much information as we can before that occasion." Thus, there is ample support in the record to support the hearing court's finding that the station house interrogation of defendant was pursuant to a premeditated plan to extract defendant's confession by false promise without the benefit of his right to counsel (see, People v Wilson, 56 NY2d 692, 694; People v Edgerton, 115 AD2d 257, 259-260, lv denied 67 NY2d 882; People v Cooper, 101 AD2d 1).

Moreover, the confession in this case was not a voluntary act, born of free will. Rather, it was the product of the concerted efforts of at least six police officers against a single defendant constituting unlawful inducement and mental coercion (see, Haynes v Washington, 373 US 503, 513; Lynumn v Illinois, 372 US 528, 534; Ferguson v Boyd, 566 F2d 873). "It is obvious that such an interrogation environment is created for no purpose other than to subjugate the individual to the will

of his examiner. This atmosphere carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity" *(Miranda v Arizona,* 384 US 436, 457). (Appeal from order of Supreme Court, Monroe County, Mark, J.—motion to suppress.) Present—Callahan, J. P., Denman, Boomer, Green and Balio, JJ.