■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v COLLIE MADISON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Grajales, J.), rendered March 19, 1983, convicting him of murder in the second degree (two counts) and burglary in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made to law enforcement officials.

Ordered that the judgment is affirmed.

Detective Robert Hart had been assigned to investigate the death of James Richardson at 333 Martens Street, Brooklyn, which was discovered on June 25, 1980. On September 23, 1980, the defendant voluntarily accompanied Detective Hart to the police station and was questioned about this homicide. He made an exculpatory statement and left the police station.

Detective Hart continued his investigation and on April 29, 1981, he again requested the defendant to accompany him to the police station. The defendant agreed and was given his *Miranda* rights. With the consent of the defendant, Detective Hart made an audiotape of the conversation, which was played for the hearing court and which we have reviewed. In this conversation, which began about noon and ended about 12:30 P.M., the defendant repeatedly restated the exculpatory statement he had made on September 23, 1980. In the light of his investigation, Detective Hart expressed his disbelief in the defendant's story. Throughout this statement the defendant persisted in denying his involvement in the death of James Richardson.

At the end of this interrogation, the defendant voluntarily agreed to undergo a polygraph examination. Arrangements were made for this examination and Detective Hart and the defendant went to Manhattan for the examination which began about 1:30 P.M. There is no evidence of any interrogation or other significant conversation between them during this time. The defendant signed a written release form both before and after the polygraph examination. During the polygraph examination, which lasted approximately an hour and a half, the defendant repeated the same story and denied any involvement in the homicide. It was only after he was told that he had failed the polygraph and was again advised of his *Miranda* rights, that the defendant made an inculpatory

statement. This occurred between 3:55 P.M. and 4:10 P.M. At this point, the defendant was arrested and returned to the 67th Precinct. At approximately 8:30 P.M., the defendant, having been advised of his *Miranda* rights again, repeated his inculpatory statement to an Assistant District Attorney on videotape. The hearing court, after hearing the testimony of Detective Hart, the polygraph examiner, and the Assistant District Attorney, found that the statements of the defendant were voluntary within the meaning of CPL 60.45 and were admissible. We agree.

The findings of the hearing court, which had the opportunity of seeing and hearing the witnesses and the tape recordings are entitled to great weight *(People v Prochilo,* 41 NY2d 759).

The defendant argued before the hearing court and on this appeal that these statements were made to Detective Hart as the result of improper promises and a psychologically coercive interrogation. There is no evidence in the record that, as our dissenting colleague states, Detective Hart "apparently lied to him about the existence of a witness". Nor do we agree with our dissenting colleague's characterization of Detective Hart's remarks. The first 10 to 15 minutes of this tape-recorded conversation consist of the defendant's repetition of his original noninculpatory story. The entire portion of the interrogation which the dissent describes as improper lasted no more than 15 to 20 minutes and did not result in any change in the defendant's statement. It was three hours later that the defendant made the inculpatory statement.

The defendant does not deny that Detective Hart advised him of his *Miranda* rights or that he waived those rights. There is no doubt that Detective Hart did use some guile and deception in his interrogation of the defendant. Specifically, Hart misinformed the defendant that Richardson died because someone put a "shiv" in him and that Hart was primarily interested in the person who used the "shiv". There is also no doubt that Detective Hart urged the defendant to tell the truth and that that fact would be made known to the District Attorney. Such actions by a police officer do not automatically warrant suppression of the statements of the defendant *(People v Tarsia,* 50 NY2d 1, 11; *People v Diaz,* 77 AD2d 523, *affd* 54 NY2d 967, *cert denied* 455 US 957). These efforts by Detective Hart were totally unavailing. During the half hour of interrogation by Detective Hart, the defendant steadfastly repeated his original exculpatory statement.

Approximately one hour later, the defendant was inter-

viewed by a polygraph examiner. The use of a polygraph as an investigatory tool "will not, in and of itself, render a confession inadmissible as the product of coercion" *(People v Leonard,* 59 AD2d 1, 14; *see also, People v Tarsia, supra,* at 11). However, the use or misuse of such an instrument is a factor to be considered among the totality of the evidence in determining whether or not a confession is the product of coercion *(People v Leonard, supra; People v Tarsia, supra).* In this case, there is no evidence that anyone misrepresented the efficacy or legality of the polygraph examination *(cf., People v Leonard, supra).* The defendant continued in his exculpatory statement during this examination. It was only when he was advised that he had failed the polygraph examination and was again advised of his *Miranda* rights that the defendant made an inculpatory statement.

Looking at the totality of the circumstances, we agree that the inculpatory statement to Detective Hart was properly admitted into evidence. While the defendant was with the police for approximately four hours, from noon until 4:00 P.M., before he inculpated himself, the interrogation was not continuous and lasted for only two hours. The defendant was not detained, but had voluntarily accompanied Detective Hart to the police station, as he had in the past, and also voluntarily agreed to a noncustodial polygraph examination. The defendant was no stranger to police interrogation and there is no evidence that he suffered from any physical or mental infirmity. It is apparent from listening to the defendant's responses to Detective Hart's skepticism with respect to his original story that the defendant was not cowed by the interrogation, nor forced into an incriminating statement. His confession was not the product of a promise creating a substantial risk of falsity *(see,* CPL 60.45 [2] [b] [i]), the result of police activities that were fundamentally unfair *(People v Tarsia, supra,* at 10), or the result of the defendant's will being overborne *(Haynes v Washington,* 373 US 503).

The facts of this case are similar to those in *People v Tarsia (supra).* In *Tarsia,* the defendant gave an exculpatory statement when first questioned about the death of his wife. When questioned again, the police used "some measure of guile" in misstating the seriousness of the defendant's actions *(People v Tarsia, supra,* at 11), but the defendant continued in his exculpatory statement. The defendant then voluntarily consented to a voice-stress test. When he was informed that the test raised questions, the defendant made his inculpatory statement. The facts herein are far removed from those found

coercive in *People v Leonard (supra* [defendant told polygraph was infallible and admissible as evidence]), *People v Anderson* (42 NY2d 35 [19 hours of interrogation by relays of police, deprived of food and sleep]), or *People v Bay* (76 AD2d 592, *appeal dismissed* 54 NY2d 808 [interrogation of high emotional intensity appealing to the defendant's religious principles, superstitious fears, sense of worth as a man and to his ethnic pride]).

We turn now to the videotaped statement given by the defendant to the Assistant District Attorney. The defendant contends that prior to advising him of his *Miranda* rights once again, the Assistant District Attorney told him that the videotape would be just for internal use. It is the defendant's contention that that statement misled him to believe that this videotape could not be used against him. This contention is without merit. A fair interpretation of these preliminary comments by the Assistant District Attorney was that the defendant was being assured that this videotape would not be used by commercial television on a news program. Further, during the course of this interrogation, the defendant was asked an open-ended question: "Then what happened?" The defendant responded, "I don't want to answer that question." The defendant contends that at that point the Assistant District Attorney should have stopped all further questioning. This is also without merit. The defendant had been specifically advised that he could pick and choose what questions he would answer. Under these circumstances, the defendant's refusal to answer a specific question cannot be considered an unqualified assertion of his right to counsel or to remain silent.

We have considered the defendant's remaining contentions and find them to be without merit. Mangano, J. P., Eiber and Sullivan, JJ., concur.

Harwood, J., dissents, and votes to reverse the judgment appealed from, to grant that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement authorities, and to order a new trial, with the following memorandum: It is clear to me that the People have failed to meet their burden of proving the voluntariness of the defendant's statements beyond a reasonable doubt *(see, People v Huntley,* 15 NY2d 72; *People v Anderson,* 42 NY2d 35). Under either the due process "totality of the circumstances" test or the statutory proscription found in CPL 60.45, the record indicates that the defendant's confession to Detective Hart was neither free nor voluntary and was induced by

deception, threats and promises *(see, Bram v United States,* 168 US 532; *People v Holland,* 48 NY2d 861; *People v Bay,* 76 AD2d 592, *appeal dismissed* 54 NY2d 808).

The audio and videotapes that were before the hearing court were also made available to this Bench. I and, it is my understanding, each of my colleagues listened to and viewed them. The audiotape persuades me that Hart did more than, as, my colleagues characterize it, "use some guile and deception in his interrogation of the defendant". Although the defendant was advised of his *Miranda* rights beforehand, the detective subsequently distorted and magnified the evidence he had against the 18-year-old defendant, apparently lied to him about the existence of a witness, told him he might not leave the precinct unless he cooperated, threatened him with a murder charge and a maximum sentence, told him that, if all he did was aid his confederate merely by binding the victim's hands, he would "run free", presented him with gruesome photographs of the deceased, and offered him the opportunity to take a polygraph examination, which, if he passed, would result in his never seeing the detective again. Further, Hart not only told the defendant that the deceased died because someone put a "shiv" into him, he built on this lie to convince the defendant that the police were interested solely in the one who did the stabbing, and that if all the defendant did was tie the victim up and put a gag in his mouth, his action was no more serious than a burglary, which Hart likened to stealing apples off a fruit stand. After being with Detective Hart for almost five hours and after being informed that he had failed the polygraph examination, the defendant made a statement that he had bound the victim's hands. All of this, together with the detective's promise to make the defendant's cooperation known to the District Attorney, improperly deceived this young defendant into making that statement.

"No doubt some of the techniques used in the questioning of this defendant are not constitutionally offensive. But when the proceedings in the station house are considered as a whole, it shows an emotional battering of the defendant that in fact overcame his will" *(People v Bay, supra,* at 600). An analysis of the relevant factors, including the duration and conditions of the defendant's detention, the manifest attitude of the police toward him, the existence of threat or inducement and the age, physical and mental state of the defendant, leads me to conclude that the defendant's statement to the detective was involuntarily made *(see, Culombe v Connecticut,* 367 US

568; *Brown v United States,* 356 F2d 230; *People v Leonard,* 59 AD2d 1). It therefore should have been suppressed, and the failure to do so deprived the defendant of a fair trial. Moreover, suppression of the defendant's subsequent videotaped statement to an Assistant District Attorney is required because this second interrogation was, in effect, a continuation of the first without any definitive, pronounced break in the questioning *(see, People v Bethea,* 67 NY2d 364; *People v Chapple,* 38 NY2d 112; *People v Johnson,* 79 AD2d 617), and was thus the fruit of a poisonous tree.