■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY DESKOVIC, Appellant. [607 NYS2d 957] —Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Colabella, J.), rendered January 18, 1991, convicting him of murder in the second degree (two counts), rape in the first degree, and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements made by him to the police.

Ordered that the judgment is affirmed.

On the afternoon of November 15, 1989, the defendant struck the victim over the head with a blunt object, and dragged her into a wooded area, where he beat, raped and strangled her.

At the pretrial *Huntley* hearing, Detectives David Levine and Tom McIntyre testified regarding numerous statements made by the defendant to police officers on December 12, 1989, and January 9, 10, 22, 23, and 24, 1990. Looking at the totality of the circumstances, we agree that the statements were properly admitted into evidence, because in all of the interviews except the first, when the defendant was clearly not a suspect, the defendant approached the police on his own initiative and volunteered to help them in their investigation. In this endeavor, he supplied the officers with the notes of his own "investigation", drew an accurate diagram of the murder scene, visited the park with police, discussed with them at length his own "theories" of how the crimes occurred, turned over a key he "found", and supplied a sample of his own blood. In addition, he was on several occasions advised of his *Miranda* rights *(see, People v Starks,* 139 AD2d 681; *People v Crosby,* 91 AD2d 20). Far from being in custody, coerced, or in any way restrained, the defendant came and went at will.

Nor is there any indication in the record that the defendant's extensive statements on January 25, 1990, to polygrapher Daniel Stephens and Detective McIntyre were precipitated by a coercive environment or police misconduct "that could induce a false confession" or that was in any other respect "so fundamentally unfair as to deny due process" *(People v Tarsia,* 50 NY2d 1, 11; CPL 60.45 [2] [b]; *see also, People v Riggins,* 161 AD2d 813; *People v Glasper,* 160 AD2d 723; *People v Melendez,* 149 AD2d 918; *People v Dyla,* 142 AD2d 423, 443; *People v Madison,* 135 AD2d 655, 657, *affd* 73 NY2d 810; *People v Henry,* 132 AD2d 673). The hearing record

establishes that the defendant freely consented to take the polygraph examination conducted by Investigator Stephens, and that he was repeatedly advised of his prerogative to not take it, to discontinue it, and to leave if he chose, or to answer only the questions he wanted to answer. He was several times reminded of his *Miranda* rights, which he repeatedly waived; he was not told that the machine was "infallible"; and he was informed that the results of the test were not admissible in a court of law unless he consented. Moreover, the questioning regarding the murder was not continuous, the interview itself was interrupted frequently, and much of it was devoted to reiterating the defendant's rights, explaining the polygraph procedures, obtaining the defendant's "background" information, and establishing the defendant's physiological baselines. Finally, there was no police deception or improper use of the polygraph *(cf., People v Leonard,* 59 AD2d 1).

Moreover, because the defendant had put in issue the voluntariness of his statements to Stephens, as well as his post-polygraph confession to Detective McIntyre, the entire interview between himself and these officers, with the exception of the results of the polygraph examination, was properly admitted into evidence with appropriate limiting instructions.

Viewing the evidence in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620; *People v Kennedy,* 47 NY2d 196; *People v Calabro,* 157 AD2d 736), we find that it was legally sufficient to establish the defendant's guilt of the crimes charged beyond a reasonable doubt. There was overwhelming evidence of the defendant's guilt in the form of the defendant's own multiple inculpatory statements, as corroborated by such physical evidence as the victim's autopsy findings *(see,* CPL 60.50; *People v Lipsky,* 57 NY2d 560, 571; *People v Hamilton,* 121 AD2d 395). Moreover, upon the exercise of our factual review power, we find that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

We have examined the defendant's remaining contentions and find them to be either unpreserved for appellate review or without merit. Mangano, J. P., Balletta, Freidmann and Florio, JJ., concur.