THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID SCOTT, Appellant. [623 NYS2d 44] —Judgment affirmed. Memorandum: County Court properly denied the motion to suppress admissions made by defendant in a post-polygraph interview with police and in a "letter of apology" written to his wife. Although defendant argues that his will was completely overborne by the improper conduct and undue pressure of the police, defendant does not contend that the polygraphist misrepresented the results of the polygraph *(see, Matter of Sandra S.,* 195 AD2d 1070, 1071; *People v Melendez,* 149 AD2d 918). The polygraphist politely, but repeatedly, impressed upon defendant the importance of telling the truth as a first step in regaining his family's trust. An examination of the totality of the circumstances surrounding defendant's confession establishes that the confession was voluntary *(see, People v Deskovic,* 201 AD2d 579, *lv denied* 83 NY2d 1003; *People v Henry,* 132 AD2d 673, 675).

All concur except Fallon and Davis, JJ., who dissent and vote to reverse in the following Memorandum.

Fallon and Davis, JJ. (dissenting). We respectfully dissent. In our view, County Court erred in denying the motion to suppress admissions made by defendant in a post-polygraph interview with police and in a "letter of apology" written to his wife. The guile and deceptive tactics used by the police were so fundamentally unfair as to deny defendant due process and the promises and threats that were made could induce a false confession *(see, People v Tarsia,* 50 NY2d 1, 11).

During an approximately five-hour session with a police interrogator, defendant was repeatedly promised that he could "wipe the slate clean" by cooperating with police and that he could "erase" his mistake by admitting that he sexually

abused his three-year-old daughter. After defendant expressed his concern that he wanted to return to his home, he was told that he would not go to jail and that with counselling, which his wife would be required to attend, he would be reunited with his family in his home. At the same time he was told that the Department of Social Services was "very good, very adept at what they do with uncooperative subjects * * * They play hardball". He was told that, if he left without saying anything, he would be "giving the bird" to the system and the system would "give him the bird" back.

The police interrogator told defendant that he was "not a mind reader" but was a polygraphist and had been doing it long enough that he "knew" when he got a deceptive response. "The psychologically coercive effect of this kind of interrogation * * * in the light of the intensive interrogation which preceded it is to be condemned" *(People v Leonard,* 59 AD2d 1, 15). It was during the lengthy interrogation that defendant authored a "letter of apology" to his wife. The record reveals that most of the letter was dictated to defendant by the police interrogator.

In view of the totality of the circumstances, we conclude that the People failed to carry their burden of showing that the statements made by defendant during the interrogation and in the letter of apology were voluntarily made. (Appeal from Judgment of Ontario County Court, Harvey, J.—Sexual Abuse, 1st Degree.) Present—Pine, J. P., Lawton, Fallon, Wesley and Davis, JJ.