■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY SOBCHIK, Appellant. [644 NYS2d 370] —Mercure, J.

Defendant, having disposed of the instant indictment by means of a negotiated plea, now appeals, challenging only County Court's denial of his motion to suppress evidence of oral admissions he made to the police on October 7, 1993. Given County Court's "peculiar advantages of having seen and heard the witnesses" (*People v Prochilo*, 41 NY2d 759, 761) and according its determinations the great weight they deserve (*see, People v Lesiuk*, 81 NY2d 485, 490), we perceive no basis for disturbing County Court's finding that defendant's self-serving testimony was incredible (*see, supra*) and ultimate conclusion that the People sustained their burden of proving beyond a reasonable doubt that defendant's admissions were not "involuntarily made" (CPL 60.45). We accordingly affirm.

The testimony adduced at the *Huntley* hearing established that on the basis of eyewitness evidence that he had burglarized a residence in the Village of Wurtsboro, Sullivan County, the State Police took defendant into custody at approximately 1:00 P.M. on October 7, 1993. Defendant was read the *Miranda* warnings and voluntarily submitted to questioning about the Wurtsboro burglary, giving an essentially exculpatory account. He was formally charged at approximately 2:00 P.M., at which time the *Miranda* warnings were again administered, and defendant voluntarily submitted to further questioning concerning the Wurtsboro burglary and a number of other burglaries. In the face of defendant's repeated protestations of innocence, at approximately 4:00 P.M. the police asked defendant if he would be willing to take a polygraph test. Defendant agreed and was transported by State Police investigators to the Troop F Barracks, arriving at approximately 5:00 P.M.

For the next 45 minutes, defendant was left alone in a room while the investigators talked with the troop polygraphist in order to decide on the questions that would be asked during the examination. A list of 11 unsolved burglaries was compiled. Then, defendant was again advised of his *Miranda* rights and told that he did not have to answer any questions and could stop the questioning at any time. He indicated that he wanted to take the test and was then questioned concerning his medical, psychological and family history and prior criminal activities while the polygraphist set up the test, a process that took approximately two hours. At approximately 7:45 P.M., defendant was hooked up to the machine and asked about his role in the 11 burglaries under investigation. He immediately began to admit his involvement in several of the burglaries, and the questioning proceeded in that connection for a period of time, although the actual polygraph test was never administered. At

approximately 8:30 or 9:00 P.M., defendant made inquiries concerning the consideration he would be given in exchange for a written confession. After consultation with the District Attorney, the police offered a 4- to 8-year prison term, which defendant refused. Defendant was then returned to the Wurtsboro barracks, processed and arraigned in a local criminal court.

On the facts present here, we are by no means persuaded that the police utilized the polygraph in a "psychologically coercive manner". Applying the standard that police stratagems will be permitted and not render a confession involuntary unless there is a showing that "the deception was so fundamentally unfair as to deny due process * * * or that a promise or threat was made that could induce a false confession" (*People v Tarsia*, 50 NY2d 1, 11 [citations omitted]; *see, People v Tankleff*, 84 NY2d 992, 994; *People v Di Fabio,* 134 AD2d 918, 920-921, *appeal dismissed* 72 NY2d 949), the courts have consistently countenanced the use of the polygraph and highly analogous (but less reliable) voice stress evaluation test as a technique for encouraging an obdurate suspect to abandon his false claims of innocence (*see, e.g., People v Tarsia, supra; People v Miller,* 220 AD2d 902; *People v Deskovic,* 201 AD2d 579, *lv denied* 83 NY2d 1003; *People v Kogut,* 176 AD2d 757, *lv denied* 79 NY2d 859; *People v Sohn,* 148 AD2d 553, *lv denied* 74 NY2d 747; *People v Di Fabio, supra; People v Dyla,* 142 AD2d 423, 443, *lv denied* 74 NY2d 808).

Our reading of the testimony credited by County Court discloses no evidence of any misrepresentation with respect to the accuracy of the procedure, the admissibility of the results or the examiner's conclusions as to defendant's veracity (*see, People v Deskovic, supra,* at 580; *People v Dyla, supra,* at 443; *People v Sohn, supra,* at 556) or evidence of police stratagems or deception so fundamentally unfair as to deny defendant due process. Notably, in view of the fact that the stated objective of the polygraph test was to determine the truth of defendant's claims of innocence, the decision to abort the test when defendant abandoned those claims was entirely reasonable (*see, People v Di Fabio, supra,* at 920-921). Nor are we persuaded by defendant's reliance upon events taking place subsequent to defendant's inculpatory statements, such as the request that defendant sign his polygraph chart, which could not have any bearing on their voluntariness (*see, supra,* at 920). Finally, it is undisputed that defendant willingly participated in the testing, and, in view of the frequent administration of the *Miranda* warnings and the many breaks in the questioning, we

are unpersuaded that the overall period of questioning rendered the confession involuntary (*see, People v Tarsia, supra,* at 12-13; *People v Deskovic, supra,* at 580), particularly given defendant's extensive prior experience with the criminal justice system (*see, People v Miller, supra,* at 904).

Defendant's additional arguments have been considered and found unavailing.

White, Peters and Spain, JJ., concur.

Cardona, P. J. (dissenting). I respectfully dissent.

The record reveals that defendant was held in custody for nine hours before making the inculpatory statements. During that time he was subjected to prolonged periods of interrogation (*see, People v Holland,* 48 NY2d 861) and prevented from speaking to the only person he requested to speak to, his girlfriend, even though it appears that she was at the police barracks (*see, People v Tarsia,* 50 NY2d 1, 12). Defendant was hooked up to the polygraph but was never told that the instrument was not actually in use. He was clearly misled regarding the use of the polygraph test (*see, People v Leonard,* 59 AD2d 1) in order to justify his continued prearraignment interrogation (*cf., People v Wilson,* 56 NY2d 692, 693). Under the totality of these circumstances, I would suppress defendant's admissions as involuntarily made, the result of police conduct that was "so fundamentally unfair as to deny due process" (*People v Tarsia, supra,* at 11; *see,* CPL 60.45 [2] [b]; *People v Deskovic,* 201 AD2d 579, *lv denied* 83 NY2d 1003).

Ordered that the judgment is affirmed.