■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES D. STRAUSS, Appellant. [656 NYS2d 774] —White, J. Appeal from a judgment of the County Court of Madison County (O'Brien, III, J.), rendered November 18, 1994, upon a verdict convicting defendant of two counts of the crime of robbery in the second degree.

Shortly before 4:00 P.M. on February 23, 1994, Mark Lewis, the owner of a convenience store located in the Town of Sullivan, Madison County, called the State Police to report that his store had been robbed by two black men who had fled in a late model greenish-blue sports car driven by a third person. Lewis further reported that he had thrown a broom handle at the car, striking the windshield. Soon after this call, William June contacted the State Police to report that he had observed the vehicle flee the scene and had unsuccessfully attempted to follow it. June described the vehicle as a late model Firebird, metallic green in color with mag wheels and "Firebird" written on the back window. Information about the robbery and the getaway car was immediately communicated to other police agencies. Around 4:10 P.M., a State Police investigator on his way to the crime scene observed a late model Firebird approaching him. While he was unable to stop the vehicle, he did

observe that it was being driven by a white male. His observation was also communicated to other police agencies.

While on routine patrol in a marked patrol car in the City of Syracuse, Onondaga County, about 25 miles from the Town of Sullivan, Officer Joseph Shanley and his partner noticed a late model Firebird being driven by a white male at about 8:28 P.M. that same day. As Shanley began to follow the vehicle, it attempted to increase its speed, whereupon Shanley engaged his siren and emergency lights. In the ensuing pursuit, he observed the driver commit several serious traffic infractions before being forced to a stop. At that point the officers approached the vehicle with guns drawn, ordered defendant (the driver) and his passenger out, handcuffed them and placed them in separate patrol cars. After taking defendant into custody, Shanley noticed that the vehicle's front windshield was cracked. He also obtained defendant's permission to search his car, discovering a black ski mask that witnesses to the crime had described as being worn by one of the perpetrators. Thereafter, Shanley issued an appearance ticket to defendant for several traffic violations but did not release him from custody, detaining defendant for about 30 minutes and then turning him over to the State Police who transported him to the State Police barracks.

When the investigating officers obtained custody of defendant, they gave him his *Miranda* rights which defendant waived. The Troopers then engaged defendant in a conversation in which they told him he was a suspect in the robbery, that they had a strong case against him and that it would be in his best interest to cooperate. In response, defendant asked what kind of deal he would get from the District Attorney if he cooperated. When he was advised of the District Attorney's offer, he emphatically rejected it, stating "I was just the wheel man. I didn't even go into the store." Interrogation ceased at this point as defendant invoked his right to counsel.

The Grand Jury returned an eight-count indictment against defendant charging him with, *inter alia*, the crimes of robbery in the first degree and robbery in the second degree. After his suppression motion was denied by County Court in a well-reasoned decision, defendant proceeded to trial which culminated in a verdict finding him guilty of two counts of the crime of robbery in the second degree. Defendant was subsequently sentenced as a second felony offender to concurrent indeterminate terms of imprisonment of $7^1/_2$ to 15 years. He now appeals.

Defendant maintains that County Court should have suppressed the physical evidence seized from his car and his in-

criminating oral statement as being "fruit of the poisonous tree" since his initial detention and arrest were without probable cause. We disagree. Having observed the commission of several traffic infractions, the Syracuse police were authorized to stop defendant's vehicle and request the occupants to exit (*see, People v Schroeder*, 229 AD2d 917, 918; *People v Lamanda*, 205 AD2d 934, 935, *lv denied* 84 NY2d 828; *People v Rodriguez*, 167 AD2d 122, 122-123, *lv denied* 77 NY2d 843). The question now becomes whether defendant's subsequent detention was likewise justified, which depends upon whether the police had a reasonable suspicion that he was engaged in criminal activity (*see, People v Banks*, 85 NY2d 558, 562, *cert denied* 516 US 868). Taking into account that Shanley was aware of the police communications regarding the robbery and the description of the getaway car and its driver, that defendant's car exactly matched the broadcast description and the discovery of the ski mask, we find that Shanley had a reasonable suspicion that defendant was engaged in criminal activity (*see, People v Sprinkler*, 198 AD2d 313, 314, *lv denied* 82 NY2d 903). Accordingly, County Court properly denied defendant's suppression motion.

We next address defendant's claim that he was unduly prejudiced by County Court's *Sandoval* ruling (*People v Sandoval*, 34 NY2d 371) permitting the prosecution to inquire about one of his four burglary convictions. Inasmuch as questioning concerning convictions of crimes similar to the one charged is not automatically precluded (*see, People v Pavao*, 59 NY2d 282, 292; *People v Perry*, 221 AD2d 736, 738, *lv denied* 87 NY2d 1023), County Court did not abuse its discretion as the record demonstrates that it appropriately balanced the *Sandoval* factors in arriving at its ruling (*see, People v Walker*, 83 NY2d 455, 458).

Defendant raises a due process claim predicated upon the fact that he was excluded from a pretrial conference and a number of bench conferences held during the trial. Defendant's exclusion from these ancillary proceedings does not require reversal if his presence would not have afforded him any meaningful opportunity to affect their outcome (*see, People v Davidson*, 89 NY2d 881, 882-883). With respect to the pretrial conference, the record shows that it dealt primarily with the logistics and procedures involved in the joint trial of defendant and his accomplice. Defendant's presence at this proceeding, which did not involve any factual inquiry, was not required, as we cannot discern how he could have provided any meaningful input that would have affected its outcome (*see, People v Ro-*

*man*, 88 NY2d 18, 26; *People v Rodriguez*, 85 NY2d 586, 591; *People v Williams*, 85 NY2d 945, 947). Although a *Sandoval* issue was raised during this conference, our determination is unaffected since the outcome was wholly favorable to defendant (*see, People v Favor*, 82 NY2d 254, 268).

Because defendant had exhibited a threatening attitude, County Court directed that he be placed in leg shackles. To avoid prejudice, defendant was allowed to remain seated throughout the trial so that the jurors would not observe the restraints. At the commencement of the trial, County Court asked defendant if he had any objection to his remaining seated during bench conferences, pointing out that he was only 7 to 8 feet away from the bench. Defendant indicated that he had no objection. In our view this evidence establishes a voluntary, knowing and intelligent waiver by defendant of his right to be present at sidebar conferences (*see, People v Vargas*, 88 NY2d 363, 376).

We have examined defendant's remaining contentions and find them unpersuasive as they lack evidentiary support.

Mikoll, J. P., Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed.