■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS L. FARLESS, JR., Appellant. [666 NYS2d 832] —Mercure, J. Appeal from a judgment of the County Court of Chemung County (Castellino, J.), rendered November 22, 1995, upon a verdict convicting defendant of the crimes of sodomy in the first degree and sexual abuse in the first degree.

We are unpersuaded by defendant's primary contention on

appeal, that he was deprived of his constitutional right to a fair trial and was unduly prejudiced by County Court's denial of his request for a continuance to obtain civilian clothing to wear at the trial. Notably, a review of the record on appeal discloses that defendant failed to raise any objection to his lack of civilian attire until after the parties had already completed a full round of jury selection and, in fact, five jurors had been selected. By that time, the entire jury pool had been given an extended opportunity to observe defendant in his prison garb, and no possible purpose could have been served by disrupting the proceedings in order to locate clothing for defendant prior to conclusion of the first day of trial. Also, defendant made no request for a mistrial and failed to avail himself of County Court's offer of a precautionary instruction that the jury was not to draw any inference or form any opinion based upon defendant's clothing. Under the circumstances, we conclude that the claimed error was not preserved for our consideration, a fact that the dissenter has apparently chosen not to address.

Defendant's remaining contentions have been considered and also found to be lacking in merit. Even accepting defendant's allegation that certain prospective jurors observed him entering the courthouse in handcuffs, it is settled law that a shackled defendant's brief exhibition to venirepersons does not, by itself, constitute a deprivation of a fair trial (*see, People v Fioravantes*, 229 AD2d 784, 785-786, *lv denied* 89 NY2d 920; *People v Dawson*, 125 AD2d 860, 861, *lv denied* 69 NY2d 879; *People v Mattison*, 97 AD2d 621, 623). Next, the evidence adduced at the *Huntley* hearing provides ample support for County Court's conclusion that defendant's inculpatory statements, given following his willing submission to psychological stress evaluation testing, were not coerced (*see, People v Tarsia*, 50 NY2d 1; *People v Sobchik*, 228 AD2d 800, 802; *People v Miller*, 220 AD2d 902, 903, *lv denied* 88 NY2d 882). Finally, in view of defendant's long criminal history, his status as a second felony offender and the nature of his crimes against very young children, we are unpersuaded that the sentences imposed, consecutive indeterminate prison terms of 10 to 20 years and 3 to 6 years, were unduly harsh (*see, People v Bombard*, 203 AD2d 711, 714, *lv denied* 84 NY2d 823; *People v Vredenburg*, 200 AD2d 797, 799, *lv denied* 83 NY2d 859).

Cardona, P. J., Casey and Yesawich Jr., JJ., concur.

Mikoll, J. (dissenting). I respectfully dissent.

In my view, the majority's decision constitutes an abrogation of our responsibility to ensure the fundamental right of a defendant to a fair trial, and is inconsistent with the holdings of

*People v Roman* (35 NY2d 978) as well as our prior decisions in *People v Neu* (124 AD2d 885) and *People v Mixon* (120 AD2d 861), which mandate reversal and a new trial.

The majority observes that "it is settled law that a shackled defendant's brief exhibition to venirepersons does not, by itself, constitute a deprivation of a fair trial", citing in support thereof *People v Fioravantes* (229 AD2d 784, *lv denied* 89 NY2d 920), *People v Dawson* (125 AD2d 860, *lv denied* 69 NY2d 879) and *People v Mattison* (97 AD2d 621). While I do not quarrel with this observation, I cannot agree that it has any application to the facts of this case. *Fioravantes* involved the "brief and inadvertent" viewing of a defendant in restraints by several prospective jurors* (*id.*, at 786). *People v Harper* (47 NY2d 857), cited in *Fioravantes*, involved two jurors' inadvertent viewing of a defendant in handcuffs upon their return from the lunch recess. Even so, in *Harper*, the Court of Appeals noted that the defendant did not subsequently seek substitution of the alternate jurors or further examination into the effect of the encounter (*see, id.*, at 858). *Dawson* likewise involved a "brief appearance" of a handcuffed defendant where the record was unclear as to whether he had been actually observed at all by the jury (*id.*, at 860). *Mattison* involved a "brief and inadvertent" viewing of a shackled defendant by two jurors (*id.*, at 623). In fact, in *Dawson* we visited the issue, notwithstanding the fact that it had not been preserved for review, to determine whether the defendant's right to a fair trial was implicated sufficiently to justify the exercise of our discretionary power to reverse. Moreover, we distinguished the facts before us in *Dawson* from those cases where we had reversed convictions (*see, People v Neu, supra*; *People v Mixon, supra*) because in the latter cases the defendants had appeared in restraints throughout their entire trials.

Far from being a "brief" viewing of an obviously incarcerated defendant by one or two jurors, or several prospective jurors, the "continuing visual communication to the jury" (*People v Roman, supra*, at 979) in the instant case lasted one full day, or one third of the three-day trial. Nor was the viewing "inadvertent" but, in fact, was a direct result of County Court's refusal to grant a brief delay to afford defendant the opportunity to don civilian clothing. The record indicates that defendant made efforts to obtain civilian clothing for trial before and after ascertaining that his own clothing would no longer fit

---

* Because none of the venirepersons who observed defendant shackled had yet been sworn, defense counsel had the option of exploring the issue on voir dire or requesting that County Court do so in an appropriate manner.

him. Defense counsel represented to the court that civilian clothing was available at the jail, but that jail personnel required additional permission for defendant to use the clothing. Additionally, civilian clothing was delivered to the jail by at least 3:00 P.M. on the first day of trial, which defendant wore to trial the next day.

It cannot be assumed that defendant was not prejudiced by County Court's unreasonable refusal to delay the proceedings. Significantly, a prosecution witness, Tammy Garris, when asked on direct examination on the first day of trial to identify defendant and describe what he was wearing, answered "[j]ail clothes", pointing at defendant. Defendant's credibility was crucial, in view of his testimony that Elmira Police Detective James Waters had misunderstood what he had said during the interview. Balancing the harm of delaying the trial until defendant had obtained appropriate clothing against the substantial danger of the erosion of the presumption of innocence (see, *Estelle v Williams*, 425 US 501, 519 [Brennan, J., dissenting]), I conclude that County Court erred in its ruling (see, *id.*; *People v Roman, supra*; *People v Gonzales*, 55 AD2d 656) and that defendant's right to a fair trial was violated.

Ordered that the judgment is affirmed.