■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERICK WESTERVELT, Appellant. [850 NYS2d 226]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (Teresi, J.), rendered August 25, 2005 in Albany County, upon a verdict convicting defendant of the crime of murder in the second degree.

At approximately noon on October 6, 2004, a neighbor discovered Timothy Gray, who was unconscious, badly beaten and in a pool of blood, in the backyard of Gray's residence in the Town of Bethlehem, Albany County. Subsequent investigation indicated that Gray had been attacked the evening of October 5, 2004 when Gray's housemates, including his girlfriend, Jessica Domery, had been working out of the area. Defendant was identified by police as a person of interest since he had recently dated Domery and, when she terminated that relationship, defendant had engaged in a series of actions aimed at intimidating and harassing Domery and Gray, including an earlier physical altercation with Gray. On October 7, 2004, defendant accompanied a member of the Town of Bethlehem police department to the police station, where he was informed of his *Miranda* rights, told he was not under arrest, then questioned for about four hours by detectives Charles Rudolph and Christopher Bowdish. He denied involvement in the crime, permitted police to search his car and agreed to return the following day to take a polygraph examination at a City of Albany police station.

On October 8, 2004, defendant was administered his *Miranda* rights and then began a polygraph examination, which he terminated part way into the process. According to Bowdish and Rudolph, shortly thereafter he told them, "I did it." While still at the Albany police station, *Miranda* rights were reread to defendant and he then gave a detailed written statement in which, among other things, he admitted punching Gray, kicking him in the face, striking him in the head and face with a wooden replica hatchet, and leaving a note written in Italian (which he had made using a translation Web site on a computer in a public library) in an effort to detract suspicion. Such a note had been discovered at the premises. Defendant also drew a map of the crime scene. Defendant was placed in custody and taken back to the Bethlehem police station for booking, where he was again given *Miranda* warnings. When he expressed remorse about the incident, Bowdish suggested that he write a letter of apology

and provided him with paper and a pen. Defendant then wrote a letter to Domery which mentioned his remorse while going on at some length about his feelings for Domery. Subsequently, on October 12, 2004, a correction officer at the county jail overheard defendant making an inculpatory statement to another inmate and the officer then engaged him in a conversation resulting in further incriminating statements.

In the meantime, on October 10, 2004, Gray died of the injuries sustained in the attack. Defendant was indicted on two counts of murder. A combined *Huntley-Mapp-Dunaway* hearing was conducted, after which County Court (Herrick, J.) denied defendant's motion to suppress his various statements with the exception of a portion of his statement to the correction officer and, as to that statement, the initial statement that the officer overheard was permitted and the statements thereafter when the officer engaged defendant in a conversation were suppressed. Following a jury trial, defendant was convicted of one count of intentional murder in the second degree and sentenced to a prison term of 25 years to life. Defendant appeals alleging that his written statement should have been suppressed as involuntary and the fruit of an unlawful arrest, his apology letter should not have been admitted into evidence since part of it was written after his right to counsel had attached, and the prosecutor made comments in summation that deprived him of a fair trial.

We consider first defendant's contention that his written statement should have been suppressed as involuntary and unreliable. The issue of the voluntariness of a statement is a factual question determined by the totality of the circumstances (*see People v May*, 263 AD2d 215, 219 [2000], *lv denied* 94 NY2d 950 [2000]; *People v White*, 261 AD2d 653, 654 [1999], *lv denied* 93 NY2d 1029 [1999]). The use of police stratagems, including a polygraph, are relevant circumstances to consider, but these will generally "not render a confession involuntary unless there is a showing that 'the deception was so fundamentally unfair as to deny due process . . . or that a promise or threat was made that could induce a false confession' " (*People v Sobchik*, 228 AD2d 800, 802 [1996], quoting *People v Tarsia*, 50 NY2d 1, 11 [1980]; *see People v Sohn*, 148 AD2d 553, 555-556 [1989], *lv denied* 74 NY2d 747 [1989]; *see also People v Dishaw*, 30 AD3d 689, 690-691 [2006], *lv denied* 7 NY3d 787 [2006]).

Here, on the first day of questioning, defendant agreed to go to the police station. He was given *Miranda* warnings and elected to talk with the police. He was interviewed by detectives for about four hours and thereafter was permitted to leave. He

voluntarily returned the next day knowing he would take a polygraph. He received *Miranda* warnings before the polygraph and elected to stop part way through the process. Defendant then made an oral admission, *Miranda* warnings were again administered and he proceeded to give a detailed statement in his own handwriting which started by acknowledging that he was making the statement of his "own free will." The credibility and factual determinations of the suppression court are supported by the record and we find no error in its suppression ruling. The police conduct was not "such as to overbear the defendant's will" (*People v Bridges*, 16 AD3d 911, 912 [2005], *lv denied* 4 NY3d 884 [2005]; *see People v Fitzgerald*, 275 AD2d 720, 720 [2000], *lv denied* 96 NY2d 734 [2001]).

Nor do we find merit in defendant's argument that his written statement was the fruit of an unlawful arrest. Although defendant denied at trial that he verbally told the detectives following the polygraph that he had attacked Gray, the detectives' testimony at the suppression hearing (which the suppression court found credible) and at the trial was to the contrary. There is no reason in this record to reject the detectives' testimony that defendant made the oral admission. Defendant's oral statement provided probable cause to place him in custody and, accordingly, his written statement was not the fruit of an unlawful arrest (*see generally People v Bell*, 5 AD3d 858, 859 [2004]; *People v Strauss*, 238 AD2d 721, 722-723 [1997], *lv denied* 91 NY2d 836 [1997]).

Defendant further contends that his apology letter to Domery should not have been admitted into evidence since it was obtained in violation of his right to counsel. This contention is premised upon proof elicited at trial that the last part of the letter was written after arraignment.* Initially, we note that, contrary to the People's suggestion that defendant was required to make a motion to reopen the suppression hearing in order to preserve this issue (*see generally* CPL 710.40), the Court of Appeals has made clear that "a claimed deprivation of the State constitutional right to counsel may be raised on appeal, notwithstanding that the issue was not preserved by having been specifically raised in a suppression motion or at trial" as long as there is a "factual record sufficient to permit appellate review" (*People v Kinchen*, 60 NY2d 772, 773-774 [1983]; *see*

---

* The time line of when the arraignment occurred with respect to the apology letter had not been developed at the earlier suppression hearing. The proof as to such issue at trial included portions of a videotape from the squad room where defendant wrote the letter and Bowdish's acknowledgment at trial that defendant "finished it up" after arraignment.

*People v Ramos*, 99 NY2d 27, 30 [2002]). Here, the record is sufficient for review and, moreover, defense counsel objected at the time the letter was offered at trial on the specific ground that it contained a postarraignment statement made without counsel present.

Turning to the merits of the argument, it is well settled that the state constitutional right to counsel attaches when formal judicial proceedings begin (*see People v Ramos*, 99 NY2d at 32; *People v Samuels*, 49 NY2d 218, 221 [1980]) and, once that right attaches, law enforcement officials may not question a defendant outside the presence of counsel (*see People v West*, 81 NY2d 370, 377 [1993]; *People v Hilliard*, 20 AD3d 674, 676 [2005], *lv denied* 5 NY3d 853 [2005]). The proof revealed that the police suggested to defendant that he write the apology letter, they provided him with. the pen and paper, after arraignment his handcuffs were removed and the uncompleted letter was made available to defendant by police with no request by defendant, and a portion of the letter was then written. This police tactic elicited a further incriminating statement that cannot be characterized as a spontaneous statement made voluntarily (*see People v Maerling*, 46 NY2d 289, 302-303 [1978]; *compare People v Baybury*, 30 AD3d 627, 628 [2006], *lv denied* 7 NY3d 785 [2006]). Under these circumstances, it was error to admit the letter into evidence.

However, on this record, we conclude that such error was harmless. "[A] constitutional error requires a reversal of a conviction and a new trial unless the error is harmless beyond a reasonable doubt, that is, 'there is no reasonable possibility that the error might have contributed to defendant's conviction' " (*People v Smith*, 97 NY2d 324, 330 [2002], quoting *People v Crimmins*, 36 NY2d 230, 237 [1975]; *see People v Wardlaw*, 6 NY3d 556, 560-561 [2006]; *People v Goldstein*, 6 NY3d 119, 129-130 [2005]). Evidence of guilt at trial included, among other things, defendant's oral admission to the detectives, his detailed written statement (which was consistent with evidence at the crime scene and the method of attack), the admissible portion of his inculpatory statement overheard by the correction officer, and that a Google search conducted on the computer at his home prior to the crime included "murder with note with letter left behind." In light of the overwhelming proof of guilt, reversal is not required (*see generally People v Paulman*, 5 NY3d 122, 134 [2005]).

Finally, we are unpersuaded by defendant's contention that comments by the prosecutor during summation constituted reversible error. The following statement by the prosecutor was

objected to upon the ground that the prosecutor was shifting the burden of proof: "Now, what person wants to kill [Gray] and would know of anybody that was willing to do that more than the defendant?" Supreme Court immediately instructed the jury to disregard the comment and, in the context of the entire trial, this comment was not so prejudicial as to deprive defendant of a fair trial (*see People v Halm*, 81 NY2d 819, 821 [1993]; *People v Beyer*, 21 AD3d 592, 595 [2005], *lv denied* 6 NY3d 752 [2005]). The remaining comments about which defendant complains were not preserved by a timely objection (*see People v Silvestri*, 34 AD3d 986, 987 [2006]; *People v Studstill*, 27 AD3d 833, 835 [2006], *lv denied* 6 NY3d 898 [2006]). In any event, were we to consider such comments, we would not find that they were so "pervasive or flagrant" as to necessitate reversal and a new trial (*People v Blair*, 32 AD3d 613, 614 [2006]; *see People v Hughes*, 280 AD2d 694, 696-697 [2001], *lv denied* 96 NY2d 801 [2001]).

Mercure, J.P., Peters, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed.