■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHAMELL MITCHELL, Appellant. [865 NYS2d 396]—

Kavanagh, J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered January 11, 2007, upon a verdict convicting defendant of the crime of burglary in the second degree.

During the early morning hours of December 15, 2005, Jenni Pomeroy and Tarence Williams were asleep in the home that they shared with their child when they were suddenly awoken by a man wielding a handgun and demanding money. Pomeroy was able, during the course of the confrontation, to leave the bedroom, close herself in a bathroom and, after hearing the intruder leave the residence, dial 911. During the call, she identified defendant as the intruder and later alleged that, during the course of the encounter, he took from the apartment a safe and two cellular phones. Pomeroy and Williams were interviewed at the police station and, after viewing a photographic array, identified defendant—an individual who each knew prior to the incident—as the intruder. About one month later, defendant was arrested after he was found hiding in the trunk of his girlfriend's automobile.

Defendant was indicted for the crimes of burglary in the first degree (two counts), robbery in the first degree and petit larceny. When defendant moved to dismiss the indictment on the ground that it was based upon legally insufficient evidence, County Court conducted an inspection of the grand jury minutes and denied the motion. County Court also denied defendant's motion to suppress any in court identification of him by the victims based upon defendant's contention that the police employed suggestive tactics while showing the victims a photographic array of potential suspects, including a photograph of defendant, on the night of the incident. After trial, defendant was convicted

of burglary in the second degree and was sentenced to a prison term of 10 years, with five years of postrelease supervision. Defendant now appeals.

Defendant initially argues that County Court erred by denying his motion to dismiss the counts in the indictment that charged him with burglary in the first degree (*see* Penal Law § 140.30 [1] [deadly weapon], [3] [dangerous instrument]) and robbery in the first degree (*see* Penal Law § 160.15 [3]), claiming that the People failed to put forth any evidence before the grand jury that the gun that defendant allegedly brandished during the break-in was either operable or loaded with live ammunition (*see People v Shaffer*, 66 NY2d 663, 664 [1985]). Even if we were to conclude that County Court erred in denying this motion, defendant was not prejudiced by this ruling because the jury acquitted him of all of the charges that were the subject of this motion (*see People v Brown*, 83 NY2d 791, 794 [1994]; *People v Thomas*, 21 AD3d 643, 645 [2005], *lv denied* 6 NY3d 759 [2005]).

Defendant also alleges that the People committed misconduct before the grand jury by questioning him and another witness about defendant's alleged involvement in gang activity. While the People's cross-examination of defendant in this regard had little or no relevance to the issues raised during that presentation, it does not appear that such questioning resulted in any meaningful prejudice to defendant or impaired the integrity of the grand jury's proceedings (*see* CPL 210.35 [5]; *People v Rivette*, 20 AD3d 598, 601 [2005], *lv denied* 5 NY3d 809 [2005]). Reversal of a criminal conviction obtained after trial based on conduct that is alleged to have occurred before the grand jury, "is a drastic, exceptional remedy and 'should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury' " (*People v Moffitt*, 20 AD3d 687, 688 [2005], *lv denied* 5 NY3d 854 [2005], quoting *People v Huston*, 88 NY2d 400, 409 [1996]; *see People v Tatro*, 53 AD3d 781, 784 [2008]). Considering the other evidence presented to the grand jury—the testimony of the two victims and the circumstances surrounding defendant's arrest—the isolated references to gang affiliation did not rise to that level and, as such, are not grounds for setting aside defendant's conviction after trial.\*

Defendant also challenges his conviction for burglary in the second degree as against the weight of the credible evidence.

---

\* No claim has been made that any reference to such activity occurred during the trial.

Where, as here, an independent factual review of the credible evidence reveals that a different result would not be unreasonable, this Court must then " 'weigh the relative . . . strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). Both victims not only knew defendant prior to this encounter, but each had ample opportunity to observe the intruder and make an identification. Specifically, Pomeroy testified that before the burglary, she knew defendant and identified him as the intruder to the police shortly after the crime was committed and at the outset of their investigation. Williams testified that on the morning in question, he woke to "have him, [defendant], standing over my bed in a hoodie, black jacket, black pants with a black baseball cap on and he is holding a gun," and that he could see defendant's "[w]hole face." Moreover, the fact that each knew defendant prior to the encounter was confirmed by defendant in his testimony before the grand jury and at trial.

In addition, defendant presented evidence at trial to the effect that he was staying at a friend's house watching her children when the crimes alleged in the indictment were committed. While this witness acknowledged being with defendant, she could not confirm that they were together at the specific time and date that the crimes in question were being committed.

Taking the evidence introduced at trial as a whole, and giving "great deference to the jury's observations of the witnesses and their demeanor, and the resulting credibility determinations," we cannot conclude that defendant's conviction for burglary in the second degree was against the weight of the credible evidence (*People v Walton*, 16 AD3d 903, 904 [2005], *lv denied* 5 NY3d 796 [2005]; *see People v Gilliam*, 36 AD3d 1151, 1152-1153 [2007], *lv denied* 8 NY3d 946 [2007]; *People v Griffin*, 26 AD3d 594, 596 [2006], *lv denied* 7 NY3d 756 [2006]; *see also People v Robinson*, 53 AD3d 681, 682 [2008]; *People v Damphier*, 51 AD3d 1146, 1147-1148 [2008]; *People v Winchell*, 46 AD3d 1096, 1097 [2007], *lv denied* 10 NY3d 818 [2008]).

Defendant also alleges that during the trial, the prosecutor committed numerous instances of misconduct that served to profoundly prejudice him and deny him a fair trial. Specifically, defendant points to statements made by the prosecutor during the voir dire of the jury pool that the victims had prior criminal records and asked members of the jury pool to, in effect, put themselves in their place and assume that they had been the victim of such a crime. Initially, it is noted that in each instance, County Court sustained defendant's objections to this line of

questioning and instructed the potential jurors to disregard them. Equally important, those statements were not "so prejudicial as to deprive . . . defendant of a fair trial" and any prejudice that may have resulted was ameliorated by the court's curative instructions (*People v Quiller*, 298 AD2d 712, 713 [2002], *lv denied* 99 NY2d 618 [2003]; *see People v Albanese*, 38 AD3d 1015, 1019 [2007], *lv denied* 8 NY3d 981 [2007]; *People v Kirker*, 21 AD3d 588, 590 [2005], *lv denied* 5 NY3d 853 [2005]). Nor do we find merit to defendant's claim that he was deprived of a fair trial by comments made by the Assistant District Attorney during his summation. While these statements would have been better left unsaid, they did not, given the full context of the prosecutor's closing arguments, go "beyond the bounds of fair commentary" (*People v Silvestri*, 34 AD3d 986, 987 [2006]; *see People v Westervelt*, 47 AD3d 969, 974 [2008], *lv denied* 10 NY3d 818 [2008]), and did not serve to deprive defendant of a fair trial (*see People v Clark*, 52 AD3d 860, 863 [2008]; *People v Anderson*, 48 AD3d 896, 897 [2008], *lv denied* 10 NY3d 859 [2008]).

Defendant next complains about the testimony of Gerald Schatzel, a police detective, to the effect that after Pomeroy and Williams had implicated defendant, "he prepared a photo-[graphic] identification." Defense counsel immediately objected and moved for a mistrial. County Court denied defendant's motion for a mistrial, but directed that the People no longer pursue that line of questioning. Since no evidence was introduced that defendant's picture was part of this photographic array, this reference, while improper, constituted harmless error (*see People v Williams*, 11 AD3d 810, 811-812 [2004], *lv denied* 4 NY3d 769 [2005]; *People v Mosley*, 296 AD2d 595, 596 [2002]).

Finally, we are unpersuaded that a 10-year prison sentence is harsh and excessive. Taking into consideration the nature of the crime for which defendant stands convicted, as well as his prior criminal record, which includes a sentence of probation with numerous violations, we find neither an abuse of discretion by County Court nor the existence of any extraordinary circumstances warranting a reduction of the sentence in the interest of justice (*see People v Rivera*, 301 AD2d 787, 790 [2003], *lv denied* 99 NY2d 631 [2003]).

Cardona, P.J., Peters, Rose and Stein, JJ., concur. Ordered that the judgment is affirmed.