■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY A. TYRELL, Appellant. [918 NYS2d 636]—

Spain, J.

On the evening of May 25, 2007, Michael Brown was shot in the chest and leg and money was forcibly taken from him in his home in the City of Albany after he was unable to pay his drug supplier, Nakia Rose, a large sum of money that Rose had come to collect for previously delivered drugs. Brown described his assailants to Albany police who responded to the scene; he reported that they were armed and driving a black BMW X5

SUV with chrome rims, likely headed south. An officer safety alert was issued for the car and assailants, who were stopped by State Troopers in the described vehicle at about 8:12 P.M. on the New York State Thruway, southbound. When State Police confirmed that the vehicle occupants—defendant and Rose— matched the victim's more detailed physical and clothing description of the assailants provided to the Albany police at the hospital, the suspects were taken to the State Police barracks in the City of Kingston, Ulster County. Albany police detectives investigating the shooting arrived around 10:20 P.M., provided *Miranda* warnings and questioned both suspects; defendant admitted having been in Albany with Rose, but solely for the purpose of bringing a female acquaintance there. The suspects were taken back to Albany and placed under arrest the next morning after the victim identified them. A search of the vehicle disclosed, in a hidden compartment, two handguns, cash, cellular phones and other evidence.

Defendant and Rose were jointly indicted and, after an unsuccessful suppression hearing, they were tried separately. Rose was convicted of first degree assault, first and second degree robbery and other crimes, and acquitted of attempted murder; we affirmed (*People v Rose*, 72 AD3d 1341 [2010]). After defendant's jury trial, at which Brown identified him as the shooter and the testimony was substantially indistinguishable from that against Rose, defendant was convicted of attempted murder in the second degree, assault in the first degree, robbery in the first degree (two counts), robbery in the second degree and criminal possession of a weapon in the second degree. Sentenced as a predicate felon to an aggregate prison term of 25 years to life, with five years of postrelease supervision, defendant now appeals.

Initially, we reject defendant's contention that County Court erred in denying his motion to suppress all of the evidence against him on the premise that he was illegally detained by State Police resulting in a de facto arrest without probable cause. The identical contentions were addressed and rejected in Rose's appeal (*id.* at 1343-1346), and we adopt the conclusions reached therein. As we held, "the vehicle was lawfully stopped by State Police on the Thruway and [Rose] was lawfully handcuffed and detained for [later] questioning because [police] had reasonable suspicion that he had been involved in this shooting" (*id.* at 1343). Contrary to defendant's claims, the "non-arrest detention was within the scope of the lawful investigative stop, during which a shooting was investigated" (*id.* at 1344); it "was permissible in scope and duration, the

coordinated investigation that occurred at some distance with Albany police to ascertain if [State Police] had stopped the correct suspects was diligent, rapid and minimally intrusive, and there was no proof that a significantly less intrusive or more rapid investigatory means was available to accomplish this purpose" (*id.* at 1345). Once their identities were confirmed, police had probable cause to arrest them, supporting their continued detention and de facto arrest. No violation of defendant's constitutional rights occurred, and his motion to suppress was properly denied.

Next, we are not persuaded by defendant's claim that the verdict was contrary to the weight of the evidence because Brown was unworthy of belief. While a different finding would not have been unreasonable as the jury could have disbelieved Brown, viewing the evidence in a neutral light we find that it was largely uncontradicted and credible (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *see also People v Romero*, 7 NY3d 633, 643-644 [2006]). "[A]ccording appropriate deference to the jury's assessment of witness credibility and demeanor, we do not find that the verdict, which depended almost wholly on credibility determinations, was against the weight of the evidence" (*People v Diotte*, 63 AD3d 1281, 1283-1284 [2009] [internal quotation marks and citation omitted]).

Brown testified that he arranged to meet Rose at a store near his house; defendant, who he did not know, was with Rose, and they drove the BMW to Brown's house. When Brown was unable to pay Rose the money due for consigned drugs because his house had been reportedly burglarized the night before, defendant ordered Brown to lie face down on the floor and demanded that he turn over his money; Brown rolled over and complied, and defendant also removed some cash from Brown's pockets while Rose pointed a handgun at him. Rose then urged defendant, armed with a 9 millimeter handgun, to shoot Brown in the head, and defendant then shot Brown several times, striking his leg and chest/arm area, and the assailants fled.

Brown's account was consistent with the information and description of the assailants given to the police, the medical testimony, cell phone records, the ballistics and shell casings evidence, and the secreted guns recovered from the BMW. It was further in accord with the testimony of neighbors who observed the assailants arrive with Brown and then depart. Also testifying was a jail inmate who defendant befriended and to whom he confessed his role in this shooting as the self-described "wetman" (shooter) or collector for a gang that was engaged in selling marihuana. Significantly, the inconsistencies or shortcom-

ings in Brown's (and the inmate's) testimony were fully explored for the jury and did not concern defendant's identity as the shooter or the details of the shooting. They were not of the type to render Brown unworthy of belief, despite his criminal history and the immunity conferred by the US Attorney for his drug selling activity and other matters (*see People v Thompson*, 79 AD3d 1269, 1271 [2010]; *People v Gragnano*, 63 AD3d 1437, 1441-1442 [2009], *lv denied* 13 NY3d 939 [2010]).

Defendant's conduct in shooting Brown repeatedly at close range with a semiautomatic handgun, and his confession that he operated as the gang's shooter, used hollow-point bullets to avoid forensic traces and should have used a stronger weapon to ensure the victim's demise, fully support the jury's conclusion that defendant intended to kill Brown and engaged in conduct that tended to effect Brown's death and, thus, its guilty verdict of attempted murder in the second degree (*compare People v Wallace*, 8 AD3d 753, 755-756 [2004], *lv denied* 3 NY3d 682 [2004]). Likewise meritless, given the foregoing testimony, are defendant's claims that the evidence "merely placed [him] at the scene of the crime and in the vehicle driven by [Rose]" and that it failed to credibly support the assault, robbery or weapon possession charges. Accepting the jury's credibility determinations, we discern no grounds for disturbing its verdict.

Defendant further challenges County Court's *Molineux* ruling, after a hearing, allowing evidence regarding his gang membership and role. This evidence stemmed from the confession to the testifying inmate in which defendant explained his role and motives in this very shooting. As such, the inmate's testimony was a "narrative description of the crimes charged [which] necessitate[d] mention of the uncharged criminal conduct [and bad acts, because they] . . . are inextricably interwoven" (*People v Gantz*, 104 AD2d 692, 692 [1984]; *see People v Ciembroniewicz*, 169 AD2d 929, 930-931 [1991]). Those admissions were admissible as a matter of law as they were probative of defendant's specific intent and motive in this shooting, as well as the manner in which he accomplished these crimes and his identity as the shooter, all disputed issues (*see People v Lee*, 80 AD3d 877, 880 [2011]; *see also People v Alvino*, 71 NY2d 233, 241-242 [1987]). While the court's ruling could have been more explicit, the record reflects that, during its combined *Sandoval-Molineux* inquiry, it engaged in the requisite "case-specific discretionary balancing of probity versus prejudice" (*People v Westerling*, 48 AD3d 965, 966 [2008]; *cf. People v Lindsey*, 75 AD3d 906, 908 [2010], *lv denied* 15 NY3d 922 [2010]). The court separately considered each item in the

People's *Molineux* proffer, admitting only those directly related to these crimes and excluding those concerning unrelated gang activity or details. Defendant raised no specific arguments at the hearing on the issue of admissibility or prejudicial effect of these acts, failing to preserve such claims (*see People v Lindsey*, 75 AD3d at 907-908). Defendant's contention that the court failed to issue a limiting instruction is not preserved for our review. Were we to review said claim, we would find that the court erred in this regard (*see id.* at 908; *People v Westerling*, 48 AD3d at 968) but, in light of the overwhelming evidence of guilt, the error was harmless (*see People v Lindsey*, 75 AD3d at 908).

Finally, we find no error or abuse of discretion in County Court's discharge of juror No. 5, after a thorough inquiry of the absent juror disclosed that he was unavailable to continue serving and there was no likelihood that he would be appearing within two hours (*see* CPL 270.35 [1], [2]; *People v Jeanty*, 94 NY2d 507, 511, 513-514 [2000]; *People v Ballard*, 51 AD3d 1034, 1035-1036 [2008], *lv denied* 11 NY3d 734 [2008]). The court spoke to the juror twice on the telephone, once with counsel present who had an opportunity to be heard, learning that, due to the inclement winter weather and widespread power outages, he needed to oversee emergency storm coverage for his radio station employer and could not appear.

Defendant's remaining claims have been considered and we find that they similarly lack merit.

Mercure, J.P., Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.