Peters, P.J.
At approximately 2:00 a.m. on November 2, 2009, two masked individuals entered a Sunoco station convenience store in the City of Schenectady, Schenectady County. While one brandished a handgun, the other vaulted over the counter and demanded money from the store’s clerk. A struggle ensued between the armed robber and a bystander who was present, during the course of which two shots were fired, and the perpetrators thereafter fled the store with money obtained from the cash register.
Later that day, Princess Alava was arrested at her apartment in connection with an unrelated shooting that occurred hours after the robbery. Defendant arrived at Alava’s apartment as the police were conducting a search and, after giving defendant permission to enter, police observed her reach under the cushion of a couch and remove a fistful of small-denomination bills. In the course of their search of Alava’s apartment, police recovered a black jacket and red scarf resembling the garb worn by the armed robber in the surveillance video, as well as a pistol that forensic evidence revealed to be the source of a projectile recovered from the Sunoco robbery.
Defendant arrived at the police station later that same evening to recover Alava’s impounded automobile and, while there, agreed to speak with a detective concerning Alava’s whereabouts at the time of the Sunoco robbery. Defendant explained that she and Alava were together for most of the night, that they did not visit any convenience stores that evening and that Alava drove *931 her home at some point before 2:00 a.m. Alava subsequently provided a statement to police implicating herself and defendant in the robbery, after which defendant was charged with robbery in the first degree, two counts of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and assault in the second degree. After the People’s first attempt to prosecute defendant ended in a mistrial,[1] a second trial ensued. A jury ultimately convicted defendant of robbery in the first degree and two counts of criminal possession of a weapon in the second degree, but acquitted her of criminal possession of a weapon in the third degree. She was sentenced to concurrent prison terms of 15 years on each count, to be followed by five years of postrelease supervision. Defendant appeals.
County Court properly denied defendant’s motion to suppress the statement she made to police. “[T]he safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation[,] [and] [t]he standard for assessing a suspect’s custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave” (People v Lewis, 83 AD3d 1206, 1207 [2011], lv denied 17 NY3d 797 [2011] [internal quotation marks and citation omitted]; see People v Kenyon, 108 AD3d 933, 935 [2013], lv denied 21 NY3d 1075 [2013]). The evidence at the Huntley hearing established that defendant had come to the police station of her own accord to recover Alava’s impounded automobile. Upon her arrival, an investigator asked if she would talk with him and defendant voluntarily accompanied him to an interview room. Defendant was not restrained in any way during the interview, did not indicate any unwillingness to speak to the investigator and was permitted to leave once the questioning was completed. The interview lasted approximately 45 minutes, was at all times cordial and, to the extent that it related to the previous night’s robbery, was investigatory rather than accusatory in nature. While the investigator initially expressed interest in the shooting involving Alava, rather than the robbery in which he considered defendant to be a potential suspect, “[p]olice suspicion of which defendant was unaware could not render [an] otherwise neutral environment coercive” (People v Rhodes, 83 AD3d 1287, 1288 [2011] [internal quotation marks and citation omitted]; see People v Cordato, 85 AD3d 1304, 1310 [2011], lv denied 17 NY3d 815 [2011]). Given the totality of the circumstances, we agree with County Court that *932 defendant was not subjected to custodial interrogation and that the statement she made to the police was admissible (see People v Brown, 107 AD3d 1305, 1306 [2013]; People v Vieou, 107 AD3d 1052, 1053 [2013]; People v Underdue, 89 AD3d 1132, 1133 [2011], lv denied 19 NY3d 969 [2012]; People v Lewis, 83 AD3d at 1208).
Defendant next claims that the verdict was against the weight of the evidence, arguing that there is insufficient proof to identify her as one of the perpetrators of the robbery. We disagree. Defendant’s identity as the armed robber was established by the testimony of Alava, who provided a detailed account of the robbery consistent with the surveillance footage of the incident and the testimony of the victims. Alava’s testimony was corroborated by the testimony of Letesha Henry, a fellow inmate, who explained that, while they were incarcerated, defendant disclosed that she had robbed the Sunoco station with Alava. Furthermore, according to Alava, defendant had obtained the pistol used in the robbery from her mother’s boyfriend and, after leaving the Sunoco station, she and defendant returned to her apartment to divide the stolen money, which consisted of small bills. Defendant’s former supervisor testified at trial that defendant asked him to exchange a large number of one dollar bills for larger bills at work later that day.
Although defendant testified on her own behalf and denied involvement in the robbery, it was within the province of the jury to assess her credibility and reject her testimony (see People v Muniz, 93 AD3d 871, 874 [2012], lv denied 19 NY3d 965 [2012]; People v Rose, 79 AD3d 1365, 1366 [2010]). The fact that Alava and Henry have criminal histories and were each testifying pursuant to cooperation agreements in which they received leniency was fully developed at trial and highlighted to the jury, and did not render their testimony incredible as a matter of law (see People v Estella, 107 AD3d 1029, 1031 [2013], lv denied 21 NY3d 1042 [2013]; People v Thompson, 75 AD3d 760, 763 [2010], lv denied 15 NY3d 896 [2010]). Defendant also argues that the victims’ descriptions of the armed perpetrator do not match her appearance and stresses the absence of any fingerprints or DNA evidence on the gun or scarf attributable to her, but this simply created credibility issues for the jury to resolve (see People v Callicut, 101 AD3d 1256, 1259 [2012], lv denied 20 NY3d 1096 [2013]; People v Sims, 57 AD3d 1106, 1108-1109 [2008], lv denied 12 NY3d 762 [2009]; People v Robinson, 53 AD3d 681, 683 [2008], lv denied 11 NY3d 794 [2008]). Thus, while a different verdict would not have been unreasonable, upon evaluating the evidence in a neutral light and *933 deferring to the jury’s credibility assessments (see People v Romero, 7 NY3d 633, 643 [2006]; People v Callicut, 101 AD3d at 1259), we are satisfied that the verdict was in accord with the weight of the evidence.
Defendant also asserts that County Court committed reversible error when it permitted the People to introduce evidence of certain prior bad acts during their case-in-chief. By failing to object to County Court’s Ventimiglia ruling or upon the admission of such evidence at trial, defendant failed to preserve this issue for our review (see People v Tyrell, 82 AD3d 1352, 1355-1356 [2011], lv denied 17 NY3d 810 [2011]; People v Taylor, 253 AD2d 471, 471 [1998], lv denied 92 NY2d 952 [1998]; People v McClain, 250 AD2d 871, 872 [1998], lv denied 92 NY2d 901 [1998]).[2] Significantly, the court gave proper and appropriate limiting instructions regarding the permissible use of such evidence, thus tempering its prejudicial effect (see People v Reid, 97 AD3d 1037, 1038 [2012], lv denied 19 NY3d 1104 [2012]; People v Lee, 80 AD3d 877, 880 [2011], lv denied 16 NY3d 833 [2011]; People v Moyer, 75 AD3d 1004, 1007 [2010]).
Nor are we persuaded that the verdict is repugnant. “ ‘[A] verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury’ ” (People v Burden, 108 AD3d 859, 859-860 [2013], quoting People v Tucker, 55 NY2d 1, 4 [1981]; accord People v Muhammad, 17 NY3d 532, 539 [2011]). As to the relevant elements, the counts of criminal possession of a weapon in the second degree, as charged to the jury, required the People to prove that defendant knowingly possessed a loaded firearm (see Penal Law § 265.03 [1] [b]; [3]). The charge of criminal possession of a weapon in the third degree required the jury to find that defendant knowingly possessed a defaced firearm (see Penal Law § 265.02 [3]). Although the parties stipulated that the gun was defaced at the time it was recovered, the jury still had to determine whether it was defaced at the time that defendant possessed it and, if so, whether defendant knew *934 it was defaced. Since defendant could knowingly possess a gun without necessarily knowing that it was defaced, her convictions for criminal possession of a weapon in the second degree were not inconsistent with her acquittal on the criminal possession of a weapon in the third degree count (see People v Carter, 60 AD3d 1103, 1105-1106 [2009], lv denied 12 NY3d 924 [2009]).
Finally, we are unconvinced by defendant’s claim that her sentence is harsh and excessive. Defendant entered a convenience store brandishing a loaded handgun, held its occupants at gunpoint and thereafter engaged in a struggle with an innocent bystander during the course of which two shots were fired. Thus, defendant’s conduct created a substantial likelihood of serious injury. Moreover, she pleaded guilty to the robbery of another convenience store that occurred on the same evening as the instant robbery. We perceive neither an abuse of discretion nor extraordinary circumstances warranting a reduction of the sentence (see People v Castellano, 100 AD3d 1256, 1258 [2012], lv denied 20 NY3d 1096 [2013]). Further, nothing in the record indicates that the sentence imposed was vindictive or otherwise designed to punish defendant for exercising her right to trial (see People v Blond, 96 AD3d 1149, 1153-1154 [2012], lv denied 19 NY3d 1101 [2012]).
Lahtinen, Stein and Egan Jr., JJ, concur. Ordered that the judgment is affirmed.

. The assault charge was dismissed at the close of the People’s proof at the first trial.

. Were we to address the merits of the claim, we would find that such evidence tended to explain defendant’s motive in possessing the gun (see People v Reid, 97 AD3d 1037, 1038 [2012], lv denied 19 NY3d 1104 [2012]; People v Burnell, 89 AD3d 1118, 1121 [2011], lv denied 18 NY3d 922 [2012]; People v Lee, 80 AD3d 877, 880 [2011], lv denied 16 NY3d 832 [2011]; People v Williams, 28 AD3d 1005, 1008 [2006], lv denied 7 NY3d 819 [2006]), and County Court’s failure to expressly recite its discretionary balancing of the probative value of such evidence against its potential for prejudice would not warrant reversal here (see People v Dickson, 82 AD3d 1289, 1290 [2011], lv denied 16 NY3d 894 [2011]; People v Meseck, 52 AD3d 948, 950 [2008], lv denied 11 NY3d 739 [2008]).