*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 20, 2014                    105664
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

ANGEL VALVERDE,
                        Appellant.
_____


Calendar Date:  October 9, 2014

Before:  Stein, J.P., Garry, Rose, Lynch and Devine, JJ.

                        _____


        Aaron A. Louridas, Delmar, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Gerald A.
Dwyer of counsel), for respondent.

                        _____


Lynch, J.

        Appeal from a judgment of the County Court of Schenectady
County (Hoye, J.), rendered December 15, 2011, upon a verdict
convicting defendant of the crimes of assault in the first
degree, criminal possession of a weapon in the second degree (two
counts) and tampering with physical evidence.

        Defendant was charged by indictment with assault in the
first degree, two counts of criminal possession of a weapon in
the second degree and tampering with physical evidence based on
his role in a street fight involving multiple participants during
the evening of September 29, 2010 in the City of Schenectady,
Schenectady County.  Thomas Ryan (hereinafter the victim) was
shot in the leg during the altercation, sustaining a fractured
femur.  Following a jury trial, defendant was convicted as

charged and sentenced to three prison terms of 15 years, with five years of postrelease supervision, and one prison term of 1⅓ to 4 years, all to run concurrently.  Defendant appeals.

To begin, defendant failed to preserve his argument that the verdict is not supported by legally sufficient evidence since he did not renew the motion to dismiss at the close of his proof (see People v Kolupa, 13 NY3d 786, 787 [2009]; People v Hines, 97 NY2d 56, 61-62 [2001]; compare People v Finch, 23 NY3d 408, 416 [2014]).  Nor was his general motion to dismiss the assault count at the close of the People's direct case adequate to preserve said claim (see People v Hawkins, 11 NY3d 484, 492 [2008]).  We, nonetheless, must determine whether all the elements of the crimes charged were proven beyond a reasonable doubt in reviewing defendant's claim that the verdict was against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Thomas, 105 AD3d 1068, 1069-1070 [2013], lv denied 21 NY3d 1010 [2013]).

Defendant essentially maintains that this is a case of mistaken identity and that the evidence was insufficient to establish that he was even at the melee, let alone that he was the shooter.  The event was prompted by an ongoing feud between members of the victim's family, and the friends and family of his sister's boyfriend, Donald Andrews.  Earlier in the day, the victim and Donald Andrews were involved in a physical altercation.  That evening, Ben Ryan, the victim's brother, and Jonathan Best were sitting on a stoop on Park Avenue when a red sports utility vehicle (hereinafter SUV) passed by several times.  Donald Andrews' two brothers, Dante Macklin and Travis Andrews (hereinafter Andrews), were in the SUV, along with Andrews' girlfriend, Samantha Bogdanowicz.  After receiving a call from his brother, the victim showed up at the scene about the same time that the SUV returned.  A fight immediately ensued.  As the fighting began to subside, shots were fired and the victim was wounded.

The People presented the testimony of several participants — the victim and his brother, Best, Bogdanowicz, Macklin and Andrews.  Importantly, Best testified that he saw defendant, who was wearing a white shirt and black hat with ear flaps, holding a

handgun at waist level and aiming it towards the victim.  When Best ran for cover, he heard three shots.  Macklin testified that defendant had the gun at the time the shots were fired.  The victim testified that he did not know defendant beforehand, but recognized him from Facebook.  The victim explained that he was fighting with defendant, when his brother and Best interceded.  As he stepped away, the victim began to fight with another individual and was shot in the leg.  Both the victim and his brother acknowledged that they did not see who actually fired the shots.  For her part, Bogdanowicz confirmed that Andrews, Macklin and defendant were all involved in the fight.  Andrews, who admitted that he dropped a knife during the fight, testified that defendant was wearing a brown hat and a white shirt.

According to Bogdanowicz, Macklin and Andrews, they returned with defendant to the home of Andrews' mother on Foster Avenue after the shooting.  Bogdanowicz testified that defendant stated during the ride, "I hit the kid," which she interpreted as meaning he shot the victim.  Andrews also testified that defendant admitted shooting the victim.  Bogdanowicz testified that, once inside the Foster Avenue residence, defendant took off his shirt, which he used to wrap the gun, and went into the basement or outside with Macklin.  Macklin confirmed that defendant hid the gun in the basement.  Bogdanowicz further testified that, as he was leaving the house, defendant stated words to the effect, "I was never here.  This never happened."

The People also called the investigating police officers, John Favata and Daniel Harrigan, as witnesses.  Favata testified that his investigation led to the Foster Avenue residence, where a search was conducted with the owner's consent.  Harrigan found the handgun wrapped in a white shirt in the basement.  Andrews was found hiding in a crawl space and both Andrews and Macklin were taken into custody.  The People finally presented the testimony of a detective who retrieved various items at the scene of the shooting, including a brown hat and a knife.  At the Foster Avenue residence, the detective took possession of the handgun, the white shirt and a sheath that matched the knife.  The gun was loaded with three spent rounds and three live rounds and was found to be operable.  Subsequent DNA testing of blood stains on the white shirt and brown hat was consistent with

defendant's DNA, while testing of the weapon and ammunition was inconclusive.  For his part, defendant presented three alibi witnesses.

On this record, we recognize that a different verdict would not have been unreasonable.  As such, our role is to "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d at 348).  Defendant contends that the jury failed to accord adequate weight to the testimony of his alibi witnesses and that the testimony of Bogdanowicz, Macklin and Andrews was patently incredible and formulated to shield Andrews from culpability as the actual shooter.  Defendant's argument ignores the testimony of the victim and his brother placing him at the scene and Best's testimony that defendant had the gun.  Moreover, the DNA evidence matched defendant with the hat and shirt recovered at the scene and at the Foster Avenue residence.  While there are inconsistencies in the testimony, after viewing and weighing the evidence in a neutral light and with deference to the jury's credibility assessments, we conclude that the verdict is not contrary to the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Perry, 116 AD3d 1253, 1255 [2014]).

Next, defendant contends that County Court's Sandoval ruling was an abuse of discretion.  At issue was defendant's plea of guilty in August 2010 to attempted criminal possession of a weapon in the second degree, just a month before the current incident.  In our view, the court acted within its discretion in fashioning a compromise that would allow the People to inquire as to whether defendant had a prior felony conviction and the date of same, without inquiring as to the details of the conviction (see People v Lloyd, 118 AD3d 1117, 1122 [2014]; People v Young, 115 AD3d 1013, 1014 [2014]).

Defendant further contends that County Court erred in not precluding an audio recording of a jailhouse phone call and related testimony due to untimely disclosure.  The recording is of a call made by a fellow inmate, Justin Broderick, at the request of defendant to defendant's girlfriend, Aleeta Corpening.

During the call, Broderick provides instructions, as written by defendant, to have two of defendant's friends contact his lawyer to advise that they left defendant's brown hat at the scene, heard shots and saw Andrews with the gun and later gave Andrews the shirt to wrap the gun. The friends were instructed to contact the lawyer that day because defendant had a court appearance the next day. Notably, the call begins with instructions advising that the call is being recorded, and Broderick confirmed that defendant was nearby and providing information to him throughout the call. We recognize this evidence was not disclosed until the third day of trial, but defense counsel, who listened to the recording, raised no objection to the timing of the disclosure. As such, the challenge has not been preserved for review. In any event, defendant has not shown any prejudice resulting from the delay. Defense counsel effectively cross-examined Broderick and presented the testimony of Corpening, who received the call.

We are also satisfied that defendant received the effective assistance of counsel. Defendant's contention to the contrary is based on counsel's agreement to waive a Wade hearing in exchange for additional time to consider a plea bargain and counsel's failure to object to the late disclosure of the audio recording. As discussed above, several witnesses identified defendant as the perpetrator. Any error in not objecting to the late disclosure of the recording was of limited import in view of the totality of this record. Counsel proffered a meaningful mistaken identity defense and actively participated through each phase of the trial. We conclude that defendant received meaningful representation (see People v Green, 119 AD3d 23, 31 [2014], lv denied 23 NY3d 1062 [2014]; People v Alls, 117 AD3d 1190, 1192-1193 [2014]; People v Hughes, 114 AD3d 1021, 1024-1025 [2014], lv denied 23 NY3d 1038 [2014]).

Finally, considering that defendant was awaiting sentencing on the earlier weapon conviction at the time of this altercation, the sentence was not an abuse of discretion and we do not find extraordinary circumstances warranting any reduction.

Stein, J.P., Garry, Rose and Devine, JJ., concur.

ORDERED that the judgment is affirmed.




                    ENTER:

                    Robert D. Mayberger
                    Clerk of the Court