*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    June 18, 2015                    105285
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

MICHAEL CAPERS,
                    Appellant.
_____


Calendar Date:   April 24, 2015

Before:   Peters, P.J., Garry, Egan Jr. and Lynch, JJ.

                    _____


        Aaron A. Louridas, Delmar, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Gerald A.
Dwyer of counsel), for respondent.

                    _____


Lynch, J.

        Appeal from a judgment of the Supreme Court (Milano, J.),
rendered January 31, 2012 in Schenectady County, upon a verdict
convicting defendant of the crime of criminal possession of a
weapon in the second degree (two counts).

        In March 2010, defendant and three cohorts were involved in
a deadly altercation with a group of pedestrians on a street in
the City of Schenectady, Schenectady County, during which two
people, Alphonzo Pittman (hereinafter Pittman) and Virgil Terry,
were fatally wounded by gunshot.  Having allegedly fired a
handgun into the crowd of people, defendant was charged in a
multicount indictment with murder in the second degree (two
counts), criminal possession of a weapon in the second degree
(six counts) and reckless endangerment in the first degree (three

counts). Defendant was ultimately convicted by a jury of two counts of criminal possession of a weapon in the second degree and sentenced to an aggregate prison term of 14 years, to be followed by five years of postrelease supervision. Defendant appeals.

We disagree with defendant's contention that his convictions were against the weight of the evidence.[1] As relevant here, a person is guilty of criminal possession of a weapon in the second degree where he or she intends to use a loaded firearm against another person (see Penal Law § 265.03 [1] [b]) or possesses any loaded firearm outside of his or her home or business (see Penal Law § 265.03 [3]). The testimony adduced at trial established that defendant was seated in the backseat of a vehicle that slowed to a stop as Catoria Pittman, Pittman's sister, approached and began speaking with the driver, whom she knew. At the end of the conversation, defendant pointed a gun at Catoria Pittman and instructed her to back away from the vehicle. After defendant and the other three occupants — including Jalil Miles and Dashuan Terry (hereinafter Terry) — exited the vehicle, an argument ensued between Catoria Pittman, Pittman and defendant, at which point several gunshots were fired by defendant and Miles.[2] Terry testified that defendant was shooting into the crowd of people. Jamel Reed, an acquaintance

---

[1] Defendant failed to preserve his challenge to the legal sufficiency of the evidence supporting his convictions, as his motion to dismiss was limited to charges for which he was not convicted (see People v Buskey, 45 AD3d 1170, 1172 [2007]; People v Alvarez, 38 AD3d 930, 934 [2007], lv denied 8 NY3d 981 [2007]). Nevertheless, our weight of the evidence review necessarily includes a verification that all of the elements of the crimes for which he was convicted were proven beyond a reasonable doubt (see People v Colburn, 123 AD3d 1292, 1292 n [2014], lv denied 25 NY3d 950 [2015]).

[2] Miles' conviction for two counts of criminal possession of a weapon in the second degree stemming from this incident was recently affirmed by this Court (People v Miles, 119 AD3d 1077 [2014], lvs denied 24 NY3d 1003 [2014]).

with whom defendant was subsequently incarcerated, testified that defendant had admitted while in jail to shooting at Pittman. Pittman's cousin and girlfriend both reportedly witnessed the argument and heard the consequent gunshots, although neither could say whether defendant was the shooter. While no weapon was found, a police detective later recovered eight 9 millimeter shell casings from the crime scene, and a firearms examiner testified that the casings were fired from at least two different guns.

Here, two eyewitnesses – Terry and Catoria Pittman – directly implicated defendant in the shootings, while a third witness testified to defendant's pretrial admission (see People v Mercado, 113 AD3d 930, 932 [2014], lv denied 23 NY3d 1040 [2014]). Contrary to defendant's contention, we are not obligated to reject the testimony of Terry and Reed on the basis that they accepted favorable plea deals in exchange for testifying against defendant, especially given that these arrangements were fully explored at trial (see People v Novick, 126 AD3d 1134, 1135 [2015]; People v Mercado, 113 AD3d at 932). In addition, the veracity of Catoria Pittman's account, in light of her relation to Pittman and her incomplete grand jury testimony,[3] was a credibility determination properly left to the jury (see People v Romero, 7 NY3d 633, 645 [2006]; People v Wingo, 103 AD3d 1036, 1037 [2013], lv denied 21 NY3d 1021 [2013]). The physical evidence of the shootings and defendant's escalation of the dispute – when considered in conjunction with this testimony – provided ample support for the conclusion that he – acting either as a principal or as an accomplice – intended to unlawfully use a loaded gun against another person (see People v Miles, 119 AD3d 1077, 1079 [2014], lvs denied 24 NY3d 1003 [2014]; People v Francis, 83 AD3d 1119, 1121-1122 [2011], lv denied 17 NY3d 806 [2011]). Furthermore, "[i]t is uncontested that the shootings occurred outside on a street" (People v Miles, 119 AD3d at 1079). Although a different outcome would not have been unreasonable, viewing the evidence in a neutral light and according appropriate deference to the jury's credibility

---

[3] Catoria Pittman's grand jury testimony omitted her accusation that defendant had threatened her with a gun.

determinations, we find that defendant's convictions were not against the weight of the evidence (see People v Valverde, 122 AD3d 1074, 1075-1077 [2014]; People v Maschio, 117 AD3d 1234, 1236 [2014]).

Next, defendant argues that County Court (Drago, J.) erred in denying his motion to suppress a photo array identification. We disagree. Here, a photograph of defendant that was taken during a juvenile delinquency proceeding and which should have been destroyed pursuant to Family Ct Act § 354.1 (2) was used in a photo array shown to Catoria Pittman. Defendant's contentions that the misuse of this photograph deprived him of due process and that the court erred in refusing to examine how the police obtained the photograph are not persuasive. "[A]lthough the statutorily conferred right to the return [or destruction] of one's photograph serves important purposes and protects important interests, the infringement of that right does not implicate constitutional considerations such as to require the sanction of suppression" (People v Patterson, 78 NY2d 711, 716 [1991]; see People v Greene, 9 NY3d 277, 280 [2007]; Matter of Quadon H., 55 AD3d 834, 835 [2008]). In any event, defendant suffered no prejudice, as there was no assertion that the photograph was unduly suggestive and the People followed Supreme Court's instruction not to discuss the photo array at trial.

The People's failure to disclose two statements that indicated that Terry shot both victims did not deprive defendant of a fair trial. Defendant preserved this argument for review by raising this issue before Supreme Court upon his discovery of these statements in the presentence investigation report (see People v Ennis, 11 NY3d 403, 414 n 2 [2008], cert denied 556 US 1240 [2009]). "'To establish a Brady violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material'" (People v Lewis, 125 AD3d 1109, 1110 [2015], quoting People v Fuentes, 12 NY3d 259, 263 [2009]). Since defendant was not convicted of murder in the second degree — the charges to which this allegedly exculpatory material relates — we perceive no prejudice from the nondisclosure relative to those charges (compare People v

Mitchell, 55 AD3d 1048, 1050 [2008], lv denied 12 NY3d 856
[2009]; People v Pittman, 33 AD3d 1118, 1120 [2006]).  While
arguably relevant for purposes of impeaching Terry, in view of
the overall evidence implicating defendant, there is no
reasonable probability that the disclosure of these statements
would have resulted in a different outcome (see People v Garrett,
23 NY3d 878, 891 [2014]; People v Page, 115 AD3d 1067, 1068
[2014], lv dismissed 23 NY3d 966 [2014]).

        Supreme Court did not err in admitting testimony regarding
a prior altercation between defendant and his friends and
Pittman's group of friends.  Defendant's contention in this
regard was preserved by his timely objection at trial (see People
v Williams, 89 AD3d 1222, 1224 [2011], lv denied 18 NY3d 887
[2012]; People v Tyrell, 82 AD3d 1352, 1355-1356 [2011], lvs
denied 17 NY3d 808, 810 [2011]).  Although prior bad acts are
inadmissible to demonstrate criminal propensity, they are
admissible to show, among other things, a defendant's motive and
intent for committing the charged crimes (see People v Morris, 21
NY3d 588, 594 [2013]; People v Alnutt, 107 AD3d 1139, 1142
[2013], lv denied 22 NY3d 1136 [2014]).  Reed testified that
defendant was involved in a fistfight with a friend of Pittman
following a high school football game just six months before the
instant shootings.  The fight eventually escalated into a large
brawl, engendering animosity between the two groups.  The account
of this altercation was certainly probative of defendant's motive
and intent for shooting at Pittman (see People v Tyrell, 82 AD3d
at 1356; People v Tatro, 53 AD3d 781, 785 [2008], lv denied 11
NY3d 835 [2008]).  Moreover, the court's exclusion of testimony
concerning gang-related gun violence that was precipitated by the
brawl reflects a "measured effort to achieve an appropriate
balance" that protected the rights of defendant while addressing
the legitimate needs of the prosecution (People v Thibeault, 73
AD3d 1237, 1241 [2010], lv denied 15 NY3d 810 [2010], cert denied
___ US ___, 131 S Ct 1691 [2011]).  Nor did Supreme Court err in
its Sandoval ruling, which permitted the People to inquire about
defendant's 2008 charges of criminal possession of a forged
instrument, petit larceny and resisting arrest and two more
recent violations of jail disciplinary rules.  As these incidents
touched on defendant's credibility (see People v Wimberly, 86
AD3d 806, 807 [2011], lv denied 18 NY3d 863 [2011]; People v

Smith, 63 AD3d 1301, 1304 [2009], lvs denied 13 NY3d 862 [2009]), and considering the several events about which Supreme Court prohibited cross-examination, we find that the court did not abuse its discretion.

We agree with defendant that Supreme Court erred in allowing the People to play for the jury that portion of an interrogation video in which he invoked his right to counsel. During an off-the-record discussion, defense counsel requested that part of the video be redacted. As a result of an apparent miscommunication between defense counsel and the court, the jury was shown defendant's request for an attorney, at which time defense counsel registered an objection and asked for a curative instruction. Accordingly, we find that this issue is preserved for our review (compare People v Wright, 126 AD3d 1036, 1038-1039 [2015]). While it is well settled that "a defendant's invocation of his or her right to counsel cannot be used against him or her during the People's direct case" (id. at 1038 [internal quotation marks, brackets, ellipses and citation omitted]; see People v Hunt, 18 AD3d 891, 892 [2005]), we find that the error in admitting this portion of the video was harmless, in light of the prompt curative instruction delivered by the court and the overwhelming evidence of defendant's guilt (see People v Wright, 126 AD3d at 1039; People v Daniels, 115 AD3d 1364, 1365 [2014], lv denied 23 NY3d 1019 [2014]; compare People v Demagall, 114 AD3d 189, 201-202, 202 n 7 [2014], lv denied 23 NY3d 1035 [2014]; People v Dashnaw, 85 AD3d 1389, 1392 [2011], lv denied 17 NY3d 815 [2011]; People v Johnson, 70 AD3d 1188, 1190-1191 [2010]).

We are unpersuaded by defendant's claim that his counsel's failure to move for a mistrial constituted ineffective assistance of counsel. Although Supreme Court suggested that such motion may be appropriate after the interrogation video was played, defense counsel, upon speaking with defendant, ultimately determined not to request a mistrial, and defendant has failed to "demonstrate the absence of strategic or other legitimate explanations" for this decision (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]; see People v Diviesti, 101 AD3d 1163, 1164-1165 [2012], lv denied 20 NY3d 1097 [2013]). Indeed, in view of the fact that the jury only convicted defendant of two of the eight counts pending

against him,[4] defense counsel may have reasonably believed that retrying the case before a different panel of jurors would have posed a greater risk to defendant than the prejudice resulting from the video (see People v Washington, 89 AD3d 1140, 1142 [2011], lv denied 18 NY3d 963 [2012]).  In any event, the record reflects that defense counsel delivered cogent opening and closing statements, vigorously questioned the weight of the People's evidence, thoroughly cross-examined witnesses, made appropriate objections and avoided convictions on the most serious charges.  Accordingly, we are satisfied that defendant received meaningful representation (see People v Jackson, 121 AD3d 1185, 1189 [2014]; People v Roach, 119 AD3d 1070, 1072-1073 [2014], lv denied 24 NY3d 1221 [2015]).

Finally, we do not agree that defendant's sentence was harsh or excessive.  As an initial matter, we note that defendant, who was just 16 years old at the time of the incident, was ineligible for youthful offender status (see CPL 720.10), given his convictions for two armed felonies (see CPL 1.20 [41]; 720.10 [2] [a]; Penal Law §§ 70.02, 265.03 [1] [b]; [3]) and his failure to establish mitigating circumstances or that he only played a minor role in the crimes (see CPL 720.10 [3]; People v Butler, 126 AD3d 1122, 1124 [2015]; People v Woullard, 115 AD3d 1053, 1054-1055 [2014], lv denied 23 NY3d 1026 [2014]).  In spite of defendant's youth and sparse criminal history, we find no abuse of discretion in the sentence imposed by Supreme Court, especially considering the violent nature of the altercation that left two people dead (see People v Hull, 125 AD3d 1099, 1101-1102 [2015]; People v Mercado, 113 AD3d at 934; see also People v Edwards, 124 AD3d 988, 992 [2015]; People v Valverde, 122 AD3d at 1078; People v Arnold, 32 AD3d 1051, 1051 [2006]).

Defendant's remaining contentions, to the extent not discussed herein, have been considered and found to be lacking in merit.

Peters, P.J., Garry and Egan Jr., JJ., concur.

_____

[4]  The three counts of reckless endangerment in the first degree were dismissed prior to trial.

ORDERED that the judgment is affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court