*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 3, 2015                    105670
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

TRAVIS HOWARD,
                        Appellant.
_____

Calendar Date:   October 20, 2015

Before:  Peters, P.J., Lahtinen, Garry and Clark, JJ.

_____

        M. Elizabeth Coreno, Saratoga Springs, for appellant.

        Andrew J. Wylie, District Attorney, Plattsburgh (Jeffrey C.
Kehm of counsel), for respondent.

_____

Garry, J.

        Appeal from a judgment of the County Court of Clinton
County (McGill, J.), rendered February 15, 2013, upon a verdict
convicting defendant of the crimes of arson in the third degree
and insurance fraud in the second degree.

        Defendant was charged with arson in the third degree and
insurance fraud in the second degree arising from allegations
that he intentionally set fire to his house in the Town of West
Chazy, Clinton County and tried to obtain the insurance proceeds.
Following a jury trial, he was convicted as charged.  County
Court denied defendant's motion to set aside the verdict,
sentenced him to concurrent prison terms of 3 to 9 years on each
count, and ordered him to pay $150,667.06 in restitution.
Defendant appeals.

Initially, we find no error in County Court's decision to admit the testimony of defendant's wife that defendant had said that he was going to burn the house down. The privilege that precludes a spouse from disclosing a confidential communication made during marriage by the other spouse (see CPLR 4502 [b]; CPL 60.10) does not protect every remark between spouses during a marriage. Instead, "the privilege attaches only to those statements made in confidence and 'that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship'" (People v Fediuk, 66 NY2d 881, 883 [1985], quoting Matter of Vanderbilt [Rosner—Hickey], 57 NY2d 66, 73 [1982]). The wife testified that her marriage to defendant began to deteriorate during the months before the fire, in part because defendant wanted to relocate to Colorado while the wife wanted to remain in New York and continue living in the marital home with her children. She stated that, as the relationship worsened, defendant told her "many" times that he would burn the house down to prevent her from taking possession of it when they separated.

The privilege "was never designed to forbid inquiry into the personal wrongs committed by one spouse against the other" and, thus, does not apply here, as defendant's statements were not prompted by trust or confidence in the marital relationship, but, instead, constituted threats of criminal activity directed at the wife (Poppe v Poppe, 3 NY2d 312, 315 [1957]; see People v Govan, 268 AD2d 689, 691 [2000], lv denied 94 NY2d 920 [2000]; People v Capobianco, 218 AD2d 707, 707 [1995], lv denied 86 NY2d 841 [1995]; People v Naylor, 120 AD2d 940, 940 [1986], lv denied 69 NY2d 714 [1986]). Further, the privilege does not apply "when the substance of a communication . . . is revealed to third parties" (Matter of Vanderbilt [Rosner—Hickey], 57 NY2d at 74). Here, the wife testified that several of defendant's threats were made in the presence of other people, including mutual friends and the couple's children, and these statements were not privileged (see People v Ressler, 17 NY2d 174, 179 [1966]; Jerome Prince, Richardson on Evidence § 5-406 [Farrell 11th ed 2008]).

Contrary to defendant's arguments, County Court did not improperly admit hearsay testimony by permitting an insurance investigator to testify about interviews he conducted while

investigating the fire.  The investigator testified that, following his investigation, he concluded that the fire was caused by human action and that this opinion was based, in part, upon his communications with an independent electrical consultant who assisted him in the investigation, and also with one of the wife's children.  Although neither of these individuals testified at trial, the professional reliability exception to the hearsay rule permits an expert witness to rely upon out-of-court information that would otherwise be inadmissible "if it is of a kind accepted in the profession as reliable in forming a professional opinion" (People v Goldstein, 6 NY3d 119, 124-125 [2005], cert denied 547 US 1159 [2006] [internal quotation marks and citations omitted]; accord Matter of State of New York v Floyd Y., 22 NY3d 95, 107 [2013]).  "[A] prerequisite to admission of such out-of-court material is a showing by the proponent that it is reliable as a basis for expert opinion in the given field" (People v Wlasiuk, 32 AD3d 674, 680-681 [2006], lv dismissed 7 NY3d 871 [2006]).  Here, the People laid the necessary foundation for allowing introduction of the information obtained from the consultant through the testimony of the investigator, who described the consultant's qualifications as a retired master electrician who had assisted the investigator in many prior fire investigations, had likewise assisted other companies and investigators and had previously been qualified as an expert in state and federal court.  Defendant was free to cross-examine the investigator and, thus, was not deprived of the opportunity for cross-examination relative to the consultant's credentials.

As for the substance of the information obtained from the consultant, the investigator testified that his initial investigation revealed that the fire had originated inside an upstairs bedroom belonging to one of the children and that, after ruling out other potential sources of the fire, the investigator identified a damaged electric receptacle in the wall of this bedroom.  The investigator then contacted the electrical consultant and the two of them inspected the receptacle together. The investigator thereafter concluded that the damage in the receptacle had been caused by the fire and did not result from an electrical defect or failure that could have been the original source of the fire.  This testimony did not provide an improper

"conduit for hearsay" (People v Goldstein, 6 NY3d at 126
[internal quotation marks and citation omitted]), as the
investigator did not testify as to the substance of any
statements made by the consultant.  Moreover, the investigator's
testimony established that his opinions regarding the origin of
the fire were not principally or solely based upon the
consultant's examination, but also upon his own observations and
research.  The information acquired from the consultant therefore
"only form[ed] a link in the chain of data" upon which the
investigator's opinion was based (People v Wlasiuk, 32 AD3d at
681; see People v Mana, 292 AD2d 863, 863 [2002], lv denied 98
NY2d 678 [2002]).

     As to the interview with the child, the investigator stated
that, in response to questioning as to any potential cause of the
fire, defendant advised that he had altered the wiring in a
charging unit belonging to the child, and that this charger had
been plugged into the damaged receptacle in the child's bedroom
at the time of the fire.  The altered charger was later given to
the investigator, and he testified that it had no fire damage of
any kind and, therefore, could not have been located in the
child's heavily damaged bedroom, nor could it have caused the
fire.  Based upon an interview with the child together with
examination of the fire scene and the evidence he recovered, the
investigator further concluded that nothing was plugged into the
damaged receptacle at the time of the fire.  The investigator
testified that interviews with a home's occupants were part of
his methods of investigation, thus providing the requisite
foundation for his reference to the interview.  As with the
electrical consultant, the investigator based his conclusions
only in part on the interview, and he did not describe the
substance of the interview or any statements made by the child.
Accordingly, County Court properly overruled defendant's
objection to this testimony.

     We reject defendant's claim that the verdict was against
the weight of the evidence because the People neither proved that
the fire was not an accident nor that defendant intended to
commit arson or insurance fraud.  The investigator testified that
he ruled out all potential non-human causes of the fire, such as
the house's wiring, appliances and woodstove, and ultimately

concluded that the fire had been caused by human action. Defendant contends that this opinion was inadequate as the investigator was unable to determine precisely how the fire had been ignited, and further acknowledged that the human actions that started it could have been accidental. However, the role of the investigator was merely to determine the cause of the fire, not to identify the person who caused it or that person's motivation. The People were not required to prove the precise mechanism by which the fire was caused, and they presented ample evidence from which the jury could conclude that defendant intentionally started the fire. In addition to the previously-described statements to his wife, defendant told several other witnesses that he planned to move to Colorado and to burn down the house to prevent the wife from keeping it. One witness testified that, after describing these plans, defendant said that "you can't split a pile of ashes." Another witness testified that she heard defendant say that he would "burn the house down before [the wife] gets it," and two additional witnesses testified that they heard defendant make similar statements. One of these witnesses further testified that defendant had asked the witness questions about the flammability of grease and whether it would be possible to start a house fire by heating cooking oil. As to motive, the wife testified that defendant had made several comments to the effect that if the house burned down, the insurance proceeds would provide financing for his planned move to Colorado.

There was also evidence suggesting that defendant had made a previous attempt to set fire to the house. Two days before the fire, the wife noticed that defendant had purchased vegetable oil, which was unusual as he did not ordinarily cook or shop for groceries. Later that day, she found him cleaning up a large amount of oil that had spilled all over the kitchen; a deep fryer was on the counter beside the stove. When she asked what he was doing, defendant replied, "Well, never mind, it didn't work anyway." The insurance investigator corroborated this account in part, stating that he found a large amount of grease or oil on several surfaces in the kitchen, but that the forensic evidence revealed that this substance had not caused the fire.

On the day before the fire, defendant told the wife that he no longer wished to fight, was willing to sell the house and divide the proceeds, and was moving out that day. He removed some of his clothing, left the house and spent that night with a friend. During his absence, the wife searched the Internet history on the family computer and discovered that defendant had made numerous searches regarding house fires, including searches for common causes of household fires, grease fires and kitchen fires. Police later conducted a forensic examination of the computer that revealed multiple searches on defendant's account during the weeks before the fire for subjects such as the causes of house fires, grease fires and "untraceable fire starters"; a report of this examination was admitted into evidence at trial. At trial, defendant claimed that someone else could have accessed his account, but acknowledged that he had conducted some of the searches. A police investigator testified that when questioned as to why he had searched for the causes of household fires, defendant responded that he "searche[d] a lot of dumb things."

Defendant testified that he spent the morning of the fire repairing a flat tire on his car, that he visited the house briefly in the early morning, that his wife had already left for work, and that only his young son and defendant's mother, who was getting the son ready for school, were present. He stated that the house was not on fire when he left and that he did not start the fire. Viewing the evidence in a neutral light and giving the appropriate deference to the jury's credibility determinations, we find that there was ample evidence from which the jury could have found that defendant intentionally set the fire, and, thus, the verdict on the arson conviction was not against the weight of the evidence (see People v Stevens, 84 AD3d 1424, 1426 [2011], lv denied 17 NY3d 822 [2011]; see also People v Nesbitt, 69 AD3d 1109, 1112 [2010], lv denied 14 NY3d 843 [2010]). Additionally, based on the evidence that defendant concealed the cause of the fire when he submitted an insurance claim for his share of the policy proceeds (see People v Abraham, 94 AD3d 1332, 1333 [2012], affd 22 NY3d 140 [2013]), the verdict on the insurance fraud conviction was not against the weight of the evidence.

County Court did not err in denying defendant's motion to set aside the verdict pursuant to CPL 330.30 (1). Although

defendant moved for a trial order of dismissal at the close of the People's case, he failed to renew the motion at the close of his proof; thus, his legal sufficiency claims were unpreserved (see People v Lane, 7 NY3d 888, 889 [2006]; People v Valverde, 122 AD3d 1074, 1075 [2014]).  An unpreserved challenge to the legal sufficiency of the evidence does not "require reversal as a matter of law, and therefore, is not a proper basis for CPL 330.30 (1) relief, which was properly denied" (People v Simmons, 111 AD3d 975, 977 [2013], lv denied 22 NY3d 1203 [2014] [internal quotation marks and citation omitted]).

Finally, defendant asserts that the sentence imposed by County Court was harsh and excessive as he had no adult criminal history before the current convictions and no fatalities or injuries resulted from the fire.  However, the record reveals that defendant's crimes had devastating emotional and economic effects upon the lives of his wife and family.  In view of the seriousness of his crime and his failure to express remorse or take responsibility for the consequences of his actions, we find no abuse of discretion or extraordinary circumstances warranting a reduction (see CPL 470.15 [6] [b]; People v Alnutt, 101 AD3d 1461, 1466 [2012], lv denied 21 NY3d 941 [2013], cert denied 565 US ___, 134 S Ct 1035 [2014]; People v Mangan, 258 AD2d 819, 822 [1999], lv denied 93 NY2d 927 [1999]).

Peters, P.J., Lahtinen and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court