People v Robbins (2025 NY Slip Op 01261)

People v Robbins

2025 NY Slip Op 01261

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

113371
[*1]The People of the State of New York, Respondent,
v
Donald S. Robbins, Appellant.

Calendar Date:January 13, 2025

Before:Egan Jr., J.P., Clark, Reynolds Fitzgerald, Fisher and Mackey, JJ.

Veronica Reed, Schenectady, for appellant.
William G. Gabor, District Attorney, Wampsville (J. Scott Porter of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Madison County (Patrick O'Sullivan, J.), rendered October 13, 2021, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree, forcible touching and endangering the welfare of a child.
In 2017, the victim (born in 2005) disclosed to a group of friends at school that someone close to her had touched her in a sexual way when she was younger. The victim made a second disclosure to another friend in November 2018, this time stating that defendant, a member of the victim's extended family, had recently touched her inappropriately while she was sleeping over at defendant's residence. The victim's friend informed his mother, who in turn reported the information to the victim's school and Child Protective Services. Following an investigation by the State Police, defendant was charged by indictment with sexual abuse in the first degree, endangering the welfare of a child and forcible touching, in connection with the two occurrences disclosed by the victim.[FN1] Defendant moved to suppress certain statements that he made during two interviews with an investigator, only one where he was advised of his Miranda rights, which was denied by County Court after a hearing. Following a jury trial, defendant was convicted of the remaining charges and sentenced to an aggregate prison term of two years, to be followed by six years of postrelease supervision. Defendant appeals.
Initially, we reject defendant's contention that the statements he made during the first interview with the investigator at his residence should have been suppressed. "The safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation, and the standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Pascuzzi, 173 AD3d 1367, 1374 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 953 [2019]). "When determining whether a suspect is in police custody, various factors are considered including the location, length and atmosphere of the questioning, whether police significantly restricted the defendant's freedom of action, the degree of the defendant's cooperation, and whether the questioning was accusatory or investigatory" (People v Lall, 223 AD3d 1098, 1107 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 984 [2024]). In light of this, "[a] court's determination that a defendant was not in custody is accorded great weight and will not be disturbed unless clearly erroneous" (People v Davis, 196 AD3d 918, 919 [3d Dept 2021] [internal quotation marks and citations omitted]). Here, the investigator went to defendant's residence for the purpose of scheduling a private interview with defendant at the police barracks because she did not have his correct telephone number. Upon her arrival, she [*2]identified herself and asked to speak with defendant, who voluntarily invited her inside and, in response to the brief investigatory questions posed by the investigator in an effort to clarify what had occurred between him and the victim, defendant voluntarily offered several statements, some which were not in response to the investigator's questions. An audio recording of the conversation confirmed that defendant was not restrained or threatened with arrest, that the discussion was informal and non-accusatory, that he did not indicate any unwillingness to speak with the investigator and that the entire encounter lasted approximately 12 minutes. Based on the foregoing, we see no reason to disturb the determination that the interview was not custodial, and, therefore, that Miranda warnings were not required (see People v Kenyon, 108 AD3d 933, 935 [3d Dept 2013], lv denied 21 NY3d 1075 [2013]; see also People v Lyons, 200 AD3d 1222, 1223-1224 [3d Dept 2021], lv denied 37 NY3d 1162 [2022]; People v Mercado, 113 AD3d 930, 931-932 [3d Dept 2014], lv denied 23 NY3d 1040 [2014]).
Next, defendant contends that the verdict is against the weight of the evidence. We disagree. "When conducting a weight of the evidence review, this Court must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Christie, 224 AD3d 1097, 1097-1098 [3d Dept 2024] [internal quotation marks and citations omitted]). As charged here, a "person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [13] years old and the actor is [21] years old or older" (Penal Law § 130.65 [4]). "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing" (Penal Law § 130.00 [3]). Additionally, "[a] person is guilty of forcible touching when such person intentionally, and for no legitimate purpose . . . forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire" (Penal Law § 130.52 [1]). Lastly, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
The evidence and testimony adduced at trial revealed that the victim would often stay over at defendant's residence, where the reported [*3]sexual contact occurred in two separate incidents. According to the victim, the first incident occurred one night during the winter of 2016 into 2017 when she was 11 years old. She testified that, while she was watching television in her bed at night, defendant came into her room and sat next to her before reaching over and massaging her chest, asking if he could kiss her breasts, and then lifting up her shirt and doing so. He then asked the victim multiple times if he could "kiss [her] butt," to which the victim testified that she told him "no" multiple times before he left. One of the victim's female friends testified that the victim had told her about this incident at school, but that she did not inform any adults based on the victim's request. As to the second incident in November 2018 when she was 13 years old, the victim testified that she woke up to defendant reaching under her shirt and rubbing her lower back, and then sliding his hand to the top of her buttocks, at which point she got out of bed and went into the living room where defendant's wife was watching television. One of the victim's male friends testified that she told him that a relative had inappropriately touched her recently, and he advised his mother, who reported the information to the authorities. According to the investigator, she spoke with defendant on two occasions, during both of which he denied the allegations and contended that he heard the victim crying one evening in bed and went into her room to check on her, touched her shoulder and possibly startled her in the process.
Although a contrary verdict would not have been unreasonable had the jury rejected the victim's version of events, the victim was extensively cross-examined and her testimony "presented a classic he-said-she-said credibility determination for the factfinder to resolve" (People v Christie, 224 AD3d at 1100 [internal quotation marks, brackets and citations omitted]). Further, the inconsistencies in the investigator's testimony were exposed on cross-examination for the jury to consider, and ultimately did not render her testimony inherently unbelievable or "contradicted by any compelling evidence and was not so unworthy of belief as to be incredible as a matter of law" (People v Machia, 206 AD3d 1272, 1276 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1151 [2022]). In further considering the testimony of the victim's friends, which corroborated the victim's timeline of events and confirmed that she had experienced unwanted sexual contact from a relative, and "deferring to the factfinder's credibility determination and viewing the evidence in a neutral light, we find that the convictions are not against the weight of the evidence" (People v Christie 224 AD3d at 1100 [internal quotation marks, brackets and citations omitted]; see People v Morey, 231 AD3d 1363, 1365-1366 [3d Dept 2024]; People v Machia, 206 AD3d at 1276-1277; People v Flower, 173 AD3d 1449, 1450 [3d [*4]Dept 2019], lv denied 34 NY3d 931 [2019]).
Lastly, we reject defendant's contention that County Court erred in admitting the investigator's testimony about defendant's marriage and his family because it allowed the jury to speculate that, when he denied the allegations, he was lying. To the extent that this challenge has been preserved for our review, we find such contention to be without merit.[FN2] In his opening statement, defendant's counsel framed the investigation as falling "very short because it was not aimed in trying to find the truth and answers," but solely to convict defendant — who he introduced as having been "married for some time" and having a "strong relationship" with his wife that was focused on family. He specifically blamed the failure to find the truth on the investigator, who he told jurors tried to speak with defendant privately and away from his wife at their residence and the police barracks — even offering him a cover story for why she wanted to privately talk to him — and that, when the wife still came to the police barracks, that the investigator became "frustrated" because she wanted to "corner" defendant. In our view, the investigator's testimony that acknowledged these points was not "introduced simply to demonstrate a predisposition to commit the subject offense" (People v Hansel, 200 AD3d 1327, 1331 [3d Dept 2021] [internal quotation marks and citation omitted], lv denied 38 NY3d 927 [2022]), but, rather, was a fair response to defense counsel's trial strategy and attacks on the credibility and motives of the prosecution's witnesses (see People v Heiserman, 127 AD3d 1422, 1424 [3d Dept 2015]). Therefore, since County Court is "accorded wide discretion in making evidentiary rulings and, absent an abuse of discretion, those rulings should not be disturbed on appeal" (People v Saunders, 176 AD3d 1384, 1389 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 35 NY3d 973 [2020]), we see no reason to intervene. Defendant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., J.P., Clark, Reynolds Fitzgerald and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant had also been charged with a second count of endangering the welfare of a child, which was dismissed prior to trial.

Footnote 2: Defendant's first and only objection to this line of questioning came after the investigator had already testified that defendant "let [her] know that his wife was [at the police barracks] because if she found out that he had touched her family, then she would leave him and divorce him," and that, resultantly, the investigator believed this to be a "barrier" to defendant being "completely honest" during the interview. It was not until after the prosecutor had asked the investigator to further explain that point that defendant finally raised an objection, which was not premised on the grounds raised now and resulted in the response that largely repeated what had already been said.